LLOYD AVERY *v.* STATE OF INDIANA.

[No. 577S330. Filed October 13, 1978.]

William T. Enslen, of Hammond, for appellant.

Theodore L. Sendak, Attorney General, Wesley T. Wilson, Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Avery was charged in two separate indictments with first-degree murder in the shooting deaths of his wife Catherine Avery, and his brother-in-law, James Raub, in 1971. Appellant pleaded guilty to second-degree murder in both cases and was sentenced to imprisonment for fifteen to twenty-five years. This judgment was reversed and the cause remanded in Avery v. State, (1976) 265 Ind. 417, 355 N.E.2d 395. On remand, appellant was tried to a jury in the Lake Criminal Court on December 13, 1976. The jury found Avery guilty of second-degree murder in the killing of James Raub and of voluntary manslaughter as to Catherine Avery. Appellant was sentenced by the trial court to imprisonment for two to twenty-one years for voluntary manslaughter and for fifteen to twenty-five years for second-degree murder.

Appellant presents three issues for review concerning: (1) the denial of his motion for mistrial; (2) withdrawal of his motion for change of venue from the judge, and; (3) the sufficiency of the evidence on the issue of appellant's sanity.

## I.

During the voir dire of the jury panel, the prosecutor addressed one of the prospective jurors, in the presence of the entire venire, as follows:

> "Q. Mr. Berg, you heard the Court say that the defendant has pled not guilty by reason of insanity?
>
> A. Yes, sir.
>
> Q. Do you understand that there is an inference that may be drawn from that plea, that inference being that the defendant is sane [sic] 'I did it, but I was insane but I did it'?
>
> A. Yes, sir."

At this point appellant made a motion for a mistrial to which the trial court responded:

> "Denied. Mr. Berg, the question was addressed to you. Therefore, the admonishment from the Court will be addressed to you, but the rest of the jurors and those in the audience should hear this also.
>
> There is no inference that may be drawn from a plea of insanity whatsoever. No inference that the fact and—that the defendant admits that he did a thing—does not admit anything.
>
> Therefore, no admonition [sic] is to be inferred from that and no fact is to be assumed. Have to be proven. By that plea, nothing has been proven. No evidence has been presented as to whether a death even occurred, let alone who did it.
>
> The plea of insanity raises an additional defense of all other defenses available to the defendant—that of not legally responsible. Do you understand that?
>
> A. Yes."

Appellant contends that the purpose of the prosecutor's question was to improperly advise the jurors that an inference could be drawn from a plea of not guilty by reason of insanity. This, it is argued, necessitated the grant of a mistrial.

The decision to grant or deny a mistrial lies in the sound discretion of the trial court, and is reviewable solely on the

question of abuse thereof. *Bradberry* v. *State*, (1977) 266 Ind. 530, 364 N.E.2d 1183, 1187. Further, it is ordinarily assumed that a jury will heed the trial court's admonition that objectionable testimony was improper and should be disregarded, and a prompt admonition is thus normally sufficient to protect the rights of a defendant. *Downs* v. *State*, (1977) 267 Ind. 342, 369 N.E.2d 1079, 1080. Of course, it is only necessary for a trial court to admonish the jury where an impropriety has actually occurred. In the present case, it may be that the prosecutor's question was intended to impart an erroneous impression on the minds of the jurors. However, we think it is equally plausible that the prosecutor was merely asking Mr. Berg if that was *his* understanding of the implication of such a plea. In any event, the harm, if any, caused by the question was cured by the court's prompt admonition. In light of the question's ambiguity and the thoroughness of the court's admonition, we hold that there was no abuse of discretion in denying appellant's motion for mistrial.

## II.

Appellant next contends that he was improperly influenced by the trial judge to withdraw his motion for change of venue from the judge. He argues that the trial judge advised him that he would waive his right to a jury trial if he moved for a change of judge. A review of the record shows this contention to be utterly without merit.

The record shows that appellant had filed a Motion for Early Trial pursuant to Ind. R. Crim. P. 4(B). At a hearing held on November 6, 1976, the trial court was confronted by a written request from appellant that his attorney file a motion for change of judge. A discussion followed wherein the trial judge attempted to determine whether Avery understood the effect that such a motion would have upon his demand for a speedy trial.

"Court: Counsel indicated to the Court that he had been been previously instructed to file a motion for change of venue from the Judge. I had indicated to him that that tolls the time for speedy trial, which you personally made on the 27th of October of 1976.

Avery: I beg your pardon. I didn't understand that.

Court: It tolls the time.

Avery: Increases the time for speedy trial?

Court: No, eliminates your speedy trial. In effect it eliminates your speedy trial until a judge qualifies. Now you have a constitutional right to a speedy trial. You do not have a constitutional right to change of venue from the Judge.

The constitutional right for speedy trial must be given up by you voluntarily and knowingly and intelligently and you have to know the consequences of doing this personally before you by some action of your attorney, waive your right to trial by jury, do you understand that?

Avery: Yes, I do."

The hearing was then adjourned so that appellant could confer with his attorney. When the hearing was reconvened, appellant addressed the court as follows:

"At this time, I would think I would rather have the speedy trial and not the change of venue. I'd rather have the constitutional right of speedy trial."

In the context of the above discussion, it is clear that the court's reference to appellant's right to trial by jury was merely inadvertent. More importantly, the content of appellant's statements make it clear that he was fully aware that it was his right to a speedy trial and not the right to a jury trial which was the subject under discussion. There is no error here.

### III.

Appellant's final contention concerns the sufficiency of the evidence presented at trial on the issue of his sanity. When a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the state. *Montague* v. *State,*

(1977) 266 Ind. 51, 360 N.E.2d 181, 187. When reviewing the sufficiency of the evidence supporting the conclusion by the trier of fact that the defendant was sane, we treat the issue like other questions of fact. *Sypniewski* v. *State*, (1977) 267 Ind. 224, 368 N.E.2d 1359, 1363. This court does not judge the credibility of witnesses nor weigh evidence, but rather looks to the evidence most favorable to the state along with any reasonable inferences which may be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Id.*

The evidence relevant to the issue of appellant's sanity consisted of the testimony of an eyewitness and two doctors along with the acts and statements of appellant himself. The evidence showed that appellant arrived at the Gary home of Mrs. Helen Lubliner, the mother of appellant's estranged wife, Catherine. Appellant, who was carrying a box, stated to Mrs. Lubliner that he had some things he did not need and which he thought Cathy might want. When Catherine entered the room, appellant pulled a rifle from the box. Appellant informed Mrs. Lubliner that if she called her son, James Raub, who at that time was shooting targets in the backyard, appellant would kill him. At that point, Catherine Avery walked through the room ignoring appellant. As she neared the kitchen, appellant shot her. After attempting to call for help, Mrs. Lubliner entered the kitchen where she observed appellant bending over his wife and stroking her hair. Appellant then exited through a kitchen door into the backyard where he shot James Raub. When the police arrived, appellant met them with the words, "I done the shooting and I'm going to Crown Point."

At trial, Mrs. Lubliner testified that appellant had not acted peculiar or abnormal. A psychiatrist called as an expert witness testified that he found in appellant no evidence of illusions, delusions or hallucinations and that in his opinion,

438

appellant was able to appreciate the wrongfulness of his act. Another doctor testified that he found no evidence that appellant was suffering from a mental disease or defect and that appellant had known what he was doing at all times on the day of the shootings. Further, the jury could have reasonably inferred that appellant felt remorse over the incident from the fact that he was kneeling beside his wife and stroking her hair after the shooting. Also, the appellant's statement to police that he had done the shooting and was going to Crown Point (the Lake County seat) could be interpreted as showing that appellant appreciated the wrongfulness of his acts. In sum, we find the evidence sufficient to support the jury's conclusion that appellant was sane at the time of the killings.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 381 N.E.2d 1226.