Michael HOLT, Appellant,

v.

STATE of Indiana, Appellee.

No. 778S131.

Supreme Court of Indiana.

Nov. 26, 1979.

Jerome M. Gardberg, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was tried by jury and convicted of first degree felony murder in the stabbing death of Edward McGuire. He received a sentence of life imprisonment. In this direct appeal of that conviction appellant contends that the trial court erred in (1) refusing to suppress his in-trial identification by Euphine McGuire, the wife of the deceased, and in (2) refusing to suppress his earth shoes.

The evidence presented at trial showed that Euphine McGuire and Edward McGuire, a couple residing in Merrillville, Indiana returned to their home at midnight on June 3, 1977, after visiting out. As they arrived they saw that lights had been turned on in the house and realized that someone was probably inside. Mr. McGuire went into the house first and Mrs. McGuire then followed. As she entered she saw her husband struggling with a man. She ran outside to call for help and then returned and then the man ran past her on the way out. Mr. McGuire died later as a result of wounds received in the attack and it was discovered that small items were stolen from the house. She had observed the attacker twice during the episode, once when she first entered under lights in a bedroom when he was about nine feet away for a period of about fifteen seconds, and again as he ran past her on his way out.

Prior to trial appellant was twice viewed by Mrs. McGuire for the purposes of identification. On June 4, 1977, three hours after the crime, she viewed him as he stood in custody in the middle of the street in the glare of the headlights of a squad car. At the time appellant had long dark hair and a dark beard. She failed to identify appellant stating that all she could remember was a man in a khaki colored suit with long hair and the suspect, appellant, had shorter hair and his clothes were different. At trial in explanation, Mrs. McGuire testified that she had been in shock at the time. On June 23, 1977, two weeks after the crime, Mrs. McGuire again viewed appellant at the police station as he stood alone in a hallway. This time she examined him through a one-way mirror from a darkened room. She again failed to identify him noting a discrepancy in his hair. At trial she again explained her failure to identify appellant as being the result of shock. In April, 1978, at trial, ten months after the crime, Mrs. McGuire viewed appellant for the third time and positively identified him as her husband's killer. It is uncontradicted that appellant had shorter hair and no beard at the trial.

Appellant contends that he was denied due process by the admission of Mrs. McGuire's trial identification. He contends that the identification procedures employed at the confrontations were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Simmons v. United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. There can be no doubt that the second showup conducted by

the police on June 23, 1977, was strongly suggestive of the fact that the police believed appellant guilty of the crime. *Stovall v. Denno,* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Manson v. Brathwaite,* (1977) 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Zion v. State,* (1977) 266 Ind. 563, 365 N.E.2d 766. It was the second occasion on which they presented appellant alone to the only eyewitness to the crime. And furthermore, there was no necessity or good reason for the police to present appellant to her in this suggestive manner which may have justified their failure to present him to the witness in a properly conducted line-up. *Zion v. State, supra.* We, therefore, conclude that the procedures employed by the police were unnecessarily and impermissibly suggestive.

We, therefore, turn to consider whether under the totality of the circumstances present in this case, these improper procedures gave rise to a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite, supra; Simmons v. United States, supra.* The opportunity of Mrs. McGuire to view the attacker existed, but was very limited. It came late at night after an evening out. When Mr. McGuire first left the car to enter the house, Mrs. McGuire became anxious and attempted to dissuade him from going inside. When she did enter she first viewed the attacker while he was struggling with her husband. Her view of him in this state of emergency lasted for only a few seconds and then she went to summon help. The next time she saw him was as he ran by her. Her verbal descriptions of the attacker had been consistent with the appearance of appellant, but were very general in nature. The first positive identification of appellant as the attacker did not occur until ten months after the crime. The witness' explanation of her reason for not making an identification of appellant at the first showup on June 3 was that she was in a state of shock, and is a reasonable one. However, that same explanation for her failure to identify appellant on June 23 is less supportable, as at that time she was in the safety of a police station, in a room separate from ap-

pellant, and had agreed to view a suspect. And there is no explanation offered at all as to how she was able to recognize appellant at trial as the killer when his appearance by that time had been altered by the shortening of his hair and removal of his beard.

There are striking similarities between this case and *Foster v. California,* (1969) 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402. In that case two identification procedures, a suggestive line-up and a showup, resulted in only a tentative identification. Thereafter, another line-up resulted in the witness' positive identification. The court held that the positive identification, which is comparable to Mrs. McGuire's in-court identification in the case at bar, was inadmissible.

Based upon the totality of the circumstances and weighing all the factors, and impelled by the *Foster* case, we find a substantial likelihood of misidentification. It was, therefore, error to permit Mrs. McGuire's testimony to go to the jury.

■ Appellant next contends that the trial court erred in admitting a pair of earth shoes into evidence. Appellant contends that such shoes were seized in the course of an illegal search of a garage in violation of rights secured him by the Fourth Amendment. Appellant lived in an apartment on Pennsylvania Street. Mattie Rogers, his mother, lived on Arkansas Street. The garage from which the shoes were taken by police was on Monroe Street. All three properties were owned by Mattie Rogers. After appellant's arrest his girlfriend, Cathy Bain, was holding his personal items from his apartment. Mattie Rogers went to Cathy Bain and requested his property. She complied with the request and the items were locked in the garage on Monroe Street by Mrs. Rogers. Meanwhile the police, armed with a search warrant, searched appellant's apartment for his shoes and found the apartment cleaned out. Further investigation led them to appellant's mother. They told her that they were looking for evidence against her son and she told them of the items in the garage and dis-

patched her husband with a key to accompany the officer there and let them in. They were admitted to the garage and took the shoes.

Appellant argues that the mother's consent did not validate the warrantless search of the garage. The State contends that appellant had no standing to challenge the search. Appellant is entitled to suppression or exclusion of the shoes from his trial, if they were illegally obtained in a search which violated his Fourth Amendment rights. *Weeks v. United States,* (1914) 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; *Mapp v. Ohio,* (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* (1969) 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176.

In determining whether appellant's rights secured by the Fourth Amendment were violated when the police intruded upon the Monroe Street garage, we must determine whether he had a legitimate expectation of privacy in that building and premises and whether the intrusion by police was reasonable. *Rakas v. Illinois,* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *Pollard v. State,* (1979) Ind., 388 N.E.2d 496. In *Idol v. State,* (1954) 233 Ind. 307, 119 N.E.2d 428, this Court considered a garage search. The defendant had placed his auto in a rental garage with the permission of the manager. A subsequent illegal entry into the garage to examine the auto by the police was found to have violated his constitutional rights. In *Bruce v. State,* (1978) Ind., 375 N.E.2d 1042, the police entered a garage at the defendant's residence, and the State was required to justify that intrusion. The facts of the case at bar are significantly different. Appellant did not place his shoes in the garage for storage and the garage itself was not appurtenant to appellant's residence. Appellant's mother got the items from appellant's girlfriend and they

were put in the Monroe Street garage. Appellant's mother testified that she owned the garage and that appellant had no interest whatsoever in it, and it was she who had the key to the lock upon the garage doors. There was no evidence that appellant was making personal use of the garage or had any authority over it. There is no evidence that he even had access to it. We, therefore, conclude that appellant had no legitimate expectation of privacy in those premises and the intrusion into it by the police could not have violated his Fourth Amendment right to be free from unreasonable searches and seizures. The trial court was correct at appellant's trial in permitting the shoes to be introduced into evidence.

In light of the due process violation occurring when Mrs. McGuire's in-court identification was permitted to go to the jury, this conviction is reversed and the case remanded for a new trial.

HUNTER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

Upon examining the undisputed evidence that was presented to the jury in this cause, I must dissent from the finding of the majority that the identification testimony of Mrs. McGuire was reversible error.

There is no question but what the identification procedures prior to trial were improper and, as a matter of fact, did not produce any probative testimony because Mrs. McGuire said she could not identify the defendant when shown to her at two different times following the incident. When Mrs. McGuire took the stand at trial, she stated she could then identify the defendant as the perpetrator of the murder of her husband, but was unable to give any reason or support for her identification. However, it was completely presented to the jury that she was not able to identify him on two previous occasions and that she could give no support for her testimony in court except to say that he was the man. She broke

down in court while giving her testimony, and it is doubtful that much credibility could or did attach to her testimony in this regard.

However, there was other evidence in the cause on which the jury could have found that the defendant did, in fact, commit this crime beyond a reasonable doubt. Footprints found in the mud around the house matched the sole of one of the shoes definitely traced to the defendant. These shoes were left with the defendant's girl friend, Cathy Bain, and were later released by Cathy Bain to the defendant's mother, who had them in her possession at the time the police obtained them. The defendant's mother identified them as the defendant's shoes. Cathy Bain also identified them as the defendant's shoes. Cathy Bain also had in her possession a camera identified as one taken from the home of the McGuires on the night of the murder, which she testified was given to her by the defendant. The camera was obtained from Cathy Bain by police officers, and was admitted into evidence. Cathy Bain testified to these matters, and also testified that defendant told her he had gone into the home to burglarize it and had killed the man by stabbing him while committing the burglary.

There was, therefore, strong and credible evidence pointing to this defendant, which the jury heard and which gave them ample evidence to find him guilty of this crime beyond a reasonable doubt. Even though the testimony given by Mrs. McGuire as to identification of this defendant was improper and of little credible value, certainly it cannot be said that this was the evidence that led the jury to convict the defendant and that they would not have done so without it. It was not good judgment for the State to offer this testimony and improper for the court to admit it, but it was not error that could reasonably be determined to have caused the conviction, which would therefore require us to find it to be reversible error.

I would so find and affirm the trial court.

GIVAN, C. J., concurs.