Thomas WHITE, Appellant,

v.

STATE of Indiana, Appellee.

No. 179S12.

Supreme Court of Indiana.

Dec. 13, 1979.

Robert W. Hammerle, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant was charged with Confinement While Armed With A Deadly Weapon and Unlawful Deviate Conduct. He was tried by a jury in Warren Circuit Court and found guilty on all counts. He appeals his conviction alleging errors in identification procedures and that consequently, errors in such procedures resulted in an insufficiency of the evidence to support the jury's verdict.

On June 5, 1978, at the Tippecanoe Mall, B. E. was abducted around 4:50 p. m. Her attacker forced his way into her car, and held a knife to her throat. He then put his arm around her and pushed her over. He tied her right leg with a rope telling her that if she ran he would break her leg. She was directed to drive and told not to look at him. After driving for some time they stopped at a dead end. She was forced to have oral sex and intercourse with him. She testified that she kept her eyes closed during part of this time and cried and had tears in her eyes. When they left, her assailant was sitting close to her in the front seat and she looked directly at him. He left the car around 6:00 p. m., and she sped away. B. E. drove to a nearby residence and police were summoned. She was treated at a hospital and then gave her statement to police.

I.

Appellant's first allegation of error concerns the overruling of his motion to suppress the in-court identification of appellant by Jim Hall. Hall was a farmer who testified that on June 5, 1979, between 6:00 and 6:30 p. m., he observed a white male walking on the road toward Boswell, Indiana. He described him as wearing glasses, an army type cap, a checkered shirt and as having light hair. On June 14, on a suggestion by an Indiana State trooper, Mr. Hall was taken to White's house by Harold Stone, Town Marshall of Boswell, Indiana, to see if Hall could identify White. Stone talked to White about a complaint he had received about White's dog. Hall got out of the car and walked to within six or eight feet of White. At the suppression hearing Stone said Hall told him that there was no doubt in his mind that White was the man he had seen walking. At the trial, Hall testified that when he observed the man walking on the road, he spoke and waved to him. He also noticed the man's particular walk. Hall then stated that, to the best of his knowledge, the appellant was the man he had seen walking down the road. Hall was careful to limit his testimony to these facts by saying:

"I am almost convinced that this was the boy that I saw walking. Whether or not he had anything to do with this case that is coming up or not, I don't know."

This testimony was significant as identification testimony because, if believed, it placed the appellant at the location at the time when, according to the victim her assailant left her car. Appellant claims that the state is required to present clear and convincing evidence of an independent basis

for Hall's in-court identification and that it failed in its burden because Hall expressed reservations about the identification. We do not agree.

■ Hall had observed a man in daylight at close range. He spoke and waved to him. Hall was wearing his glasses at that time. He described the man and his clothing and the fact that he was wearing glasses. When Hall was taken to White's residence he identified him there. He identified him at trial as above set out. Although this witness cautiously limited his identification at trial, such statements are not inadmissible because they are qualified. The jury was able to weigh Hall's statements. It was not error to admit this identification.

■ In regard to the appellant's claim that the view of the appellant at his home was improper, we have held that the presentation of a single suspect is inherently suggestive. *Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193, 198. However, the in-court identification is nevertheless permissible if the witness has a basis for the identification which was independent of the suggestive procedure. *Young v. State,* (1979) Ind., 395 N.E.2d 772; *Love v. State,* (1977) 266 Ind. 577, 365 N.E.2d 771. There was ample basis for the in-court identification which was independent of the view at White's house.

## II.

Appellant next contends that it was error to overrule his motion to suppress the in-court identification by the victim, B. E., based on his claim that it was a product of a series of unduly suggestive pre-trial confrontations.

B. E. described her assailant to the police. She described his clothing and him personally as having facial acne, blond hair, large prominent eyes and as wearing black rimmed glasses. She described his expression and grin. B. E. testified that she viewed a couple of hundred or more mug shots and identified no one. She attempted to use the composite machine to produce a picture of him and was unable to do so to her satisfaction. Later an artist helped create a sketch from her descriptions. Two detectives picked B. E. up at her place of employment and she viewed three men who were in a car which the officers had stopped. She did not identify any of them. When they were driving through Boswell and while she was trying to further describe her attacker, they passed a car with a man and others in it. B. E. said "Like that." The car contained a man, a woman and children. It was later determined that these people were White and his family. At the suppression hearing the police officer testified that he and B. E. followed the car after she stated that the driver looked a lot like the person who had abducted and raped her. The car pulled into a drive at a mobile home residence and the officer stopped at an IGA store parking lot and let B. E. look through his binoculars. There was no testimony on what happened next or whether or not B. E. saw anything through the binoculars. Apparently B. E. never testified at trial about this incident. Later officers took her to National Homes to view the men going to their cars and she picked appellant out of the crowd, saying "There he is." Then she viewed a line-up of six men which included appellant White. She identified him and then the men were asked to speak the words, "move over" and she restated her identification.

Appellant claims that these confrontations were so arranged as to make the resulting identification virtually inevitable, *citing Foster v. California,* (1969) 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 and that therefore it was error to admit the in-court identification of the appellant White by the victim, B. E. This claim is without merit.

■ Appellant concedes that the victim's viewing of White as he passed in the automobile with his family was not unduly suggestive nor was it arranged by the police. He argues that the alleged viewing through the binoculars was unduly suggestive. There is no trial testimony on this incident and no testimony as to what, if anything, B. E. saw through the binoculars, or whether

or not an identification was made at that time. Regardless of whether or not B. E. saw or identified White at this time, such a procedure would not have been unnecessarily suggestive. Once the appellant became a suspect, the next reasonable step in the investigatory process was to determine if the victim could identify him. Appellant did not know he was suspected by the police and was not in police custody or restraint. He was in an automobile with his family. The officer followed him on the basis of the victim's comments. Under these circumstances, the procedure used was permissible. *Zion v. State* (1977) Ind., 365 N.E.2d 766.

The following identifications occurred at National Homes parking lot where B. E. picked appellant out of the group of people going to their cars saying, "There he is." Later she picked him out of a six man line-up. This situation is completely unlike *Foster v. California, supra,* which involved a suggestive line-up and show-up which had resulted only in tentative identifications. Here B. E. had initiated the view of appellant at his home by spontaneously recognizing him as he drove by. She identified him from a group of people and picked him from a line-up. There is no record of her having ever misidentified White, or of her having identified anyone other than White, or having failed to identify White. *Compare Holt v. State,* (1979) Ind., 396 N.E.2d 887.

Appellant also complains that only two of the men in the line-up wore glasses and that only one wore dark rimmed glasses. He complains that B. E. could not have seen her attacker clearly because she testified that during part of the time of the incident she had tears in her eyes and had her eyes closed. These comments by appellant do not render the identification procedures improper. The men in the line-up were of approximately the same age, height and general description and were similarly dressed. Two wore glasses. One of them, not White, also wore a cap which had also been part of the attacker's description. B. E. had observed the appellant in daylight and testified that she looked straight at him

at one point. She was with him for over an hour. She described him in detail and helped create a sketch of him, noticed him in a passing car, had identified him from a group of people and picked him out of a line-up. It was not error to overrule appellant's motion to suppress her in-court identification.

### III.

Appellant's final allegation of error is that because of the previously discussed alleged errors in identification procedures the evidence was insufficient to support the jury's verdict. He also argues that the jury should have therefore believed the alibi appellant offered.

This argument fails to argue the lack of evidence on the elements of the offenses and this issue is waived. *Guardiola v. State* (1978) Ind., 375 N.E.2d 1105. Appellant is asking this court to judge the credibility of witnesses which we will not do and to overturn the conclusions of the jury on that basis, which we will not do. It is the prerogative of the jury to believe whomever they choose, and to disregard the testimony of witnesses they do not believe. *Sypniewski v. State,* (1977) Ind., 368 N.E.2d 1359. As discussed in the previous issues, there was ample evidence presented upon which the jury could base its verdict.

Judgment affirmed.

All Justices concur.