Abram HARRIS et al.,
Defendants-Appellants,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 778S127.

Supreme Court of Indiana.

April 1, 1980.

Cohen & Thiros, Nick J. Thiros, Merrillville, for defendants-appellants.

Theodore L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

PRENTICE, Justice.

Defendants (Appellants) were convicted in a trial by jury of inflicting physical injury in the commission of a robbery, Ind.Code § 35–13–4–6 (Burns 1975). Both were sentenced to life imprisonment; however, the trial court suspended all but ten (10) years of Harris' sentence and all but fifteen (15) years of Horton's term of imprisonment. Their appeal presents the following issues:

(1) Whether the trial court erred in refusing to allow Defendants' trial counsel to withdraw.

(2) Whether the trial court erred in failing to suppress the victim's in-court identification of the Defendants.

\*      \*      \*      \*      \*      \*

## ISSUE I

In a joint trial, defendants and a third co-defendant were represented by the same counsel. Several times during trial, counsel moved for leave to withdraw, indicating to the court that a conflict of interest had arisen because of a plea agreement offered by the State. Counsel's motions were denied. Although counsel offered to "explain more fully" in an *in camera* hearing, the trial court indicated that it could not participate in any way in the plea negotiations and denied the request. Defendants, however, were permitted to address the court outside the presence of the jury, although they were not allowed to describe any details of the plea negotiations.

■ Defendants contend that the trial court failed to "take adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel" and thus, that the court erred in denying counsel's motions for leave to withdraw. In their brief, they direct us to an affidavit, attached to their amended motion to correct errors, in which trial counsel stated that, while he believed the plea agreement offered by the State was in Defendants' best interests, the conflict was such that he "could not encourage" them to accept it.

In *Patterson v. State*, (1979) Ind., 386 N.E.2d 936, we dealt with a similar issue and stated that "the adequacy of the inquiry must be judged in light of the individual situation and the likelihood that a conflict will arise." 386 N.E.2d at 941.

When Defendants were permitted to address the trial court, they indicated that they were dissatisfied with trial counsel because of "strong differences in personality and opinion," and because counsel "kept pushing the plea bargain" and "so strongly urged" that they accept it. Defendants stated that because counsel encouraged a plea agreement, he did not believe in their innocence and therefore, could not adequately defend them in trial. Indeed, counsel informed the court that he had "strongly encouraged" the plea agreement, and that there had been "a complete loss of confidence." We thus believe that the con-

flict, if any, was between defendants and their attorney, and not between the co-defendants. Under these circumstances, the trial court's inquiry into the potential conflict was adequate.

Citing *Holloway v. Arkansas*, (1978) 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, Defendants contend that they need show no prejudice where the trial court "failed to make any substantial inquiries" into the nature of any potential conflicts. This assertion presupposes a deficiency in the trial court's inquiry.

"* * * Although *Holloway* does hold that once the reviewing Court has found that the trial court has improperly required joint representation over timely objection, reversal is automatic without a showing that the defendant has been prejudiced by the alleged conflict of interests, it must first be shown that the trial court's actions were improper." *Patterson, supra*, 386 N.E.2d at 941.

As previously determined, the trial court's inquiry was adequate, and this contention, therefore, is without merit.

## ISSUE II

A few minutes after the victim was robbed by three men, he looked out his apartment window and saw that the police had arrived and were taking three men and one woman into custody. The victim went outside and identified the defendants as two of the men who had robbed him. The following day, he went to Gary police headquarters to give a statement. The defendants were then brought into the room with the victim, where he again identified them. Defendants filed a motion to suppress the victim's in-court identification, contending that it was tainted by the "unduly suggestive" show-up conducted at the police station. The prosecution did not contend that the identification procedure at police headquarters was proper, but asserted that there was, nevertheless, an "independent basis" for the victim's in-court identification. The trial court agreed and overruled Defendants' motion to suppress.

On appeal, Defendants contend that the State failed to "show an independent basis for the in-court identification" and therefore, that the trial court erred when it overruled Defendants' motion.

■ In-court identifications are admissible where the State can "establish by clear and convincing evidence that the in-court identifications [are] based upon observations" gained independently of any unduly suggestive pre-trial confrontations. *United States v. Wade*, (1967) 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165. Among the factors to be considered in making this determination are:

"* * * the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."

*United States v. Wade, supra*, 388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165.

In *Dillard v. State*, (1971) 257 Ind. 282, 289, 274 N.E.2d 387, 389, we set out additional tests, including:

"* * * the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, [and] opportunity to observe particular characteristics of the criminal * * *."

■ Here, the victim was able to and did identify the Defendants within minutes after the robbery. The robbery occurred during daylight hours, and the lighting in the victim's apartment building was "good." The incident lasted approximately twenty minutes, and neither Defendant wore a mask. Although the victim was forced to lie on the floor during part of the time, he was very close to the Defendants for the three to four minutes that each held a gun to his head. At other times, he was no more than four to six feet away from them.

The Defendants rely upon the victim's testimony, upon cross-examination, as revealing that the in-court identification was dependent, in part, upon the show-up proceedings at the police station. In this regard, the victim merely acknowledged that his mental recall of the Defendants revealed both instances, i. e. the robbery and the show-up.

■ The Wade-Gilbert rule was fashioned to guard against identifications being made in consequence of suspects being in police custody. Hence, but for the unchallenged identification of the Defendants by the victim prior to his identification of them while in police custody, we might be hard pressed to say that the in-court identification was based upon observations gained independently of the unduly suggestive pre-trial confrontation. Here, however, the police custody, alleged to be the contaminant, was itself the product of an unchallenged identification. If we assume, then, that the view of the Defendants in police custody some how influenced the in-court identification, it is nevertheless, of no consequence. At most, there was simply one extra and unnecessary identification, which did no harm, because the basis for the in-custody status of the Defendants was, itself, the taint-free identification.

Under these circumstances, we believe that there can be no question about the reliability of the victim's identifications. Thus, the trial court properly admitted them.

We find no error, and the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.