Carl Fletcher DOOLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1080S401.

Supreme Court of Indiana.

Nov. 13, 1981.

David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant, Carl Fletcher Dooley, was convicted of rape, Ind.Code § 35–42–4–1 (Burns Repl. 1979), and burglary in the first degree, Ind.Code § 35–43–2–1 (Burns Repl. 1979) and was sentenced to a term of twenty (20) years. This cause is the second trial of the defendant, the first having been reversed and remanded for a new trial by this court due to the prosecutor's comments upon defendant's failure to testify at trial. *Dooley v. State*, (1979) Ind., 393 N.E.2d 154.

The defendant raises six errors on appeal, concerning:

1. whether the trial court erred in permitting the rape victim to make an in-court identification of the defendant;

2. whether the trial court erred in not permitting defendant's new counsel to present an alibi defense because no alibi defense had been presented in the first trial;

3. whether the trial court erred in allowing the State additional discovery after the trial started;

4. whether the trial court should have granted a mistrial after it was discovered that one of the jurors knew the victim and communicated this fact to other jurors;

5. whether the trial court erred in permitting the rape victim to testify about the purpose of therapy she received after the rape; and

6. whether there was sufficient evidence introduced at the trial linking defendant to the crimes.

On September 10, 1977 at around 11:00 p. m., D. D., the victim, was asleep at her residence on Fieldhouse Avenue in Elkhart. D. D., was awakened by a noise and walked into her living room to investigate. She saw a man standing at her back door. The man broke the door window, reached in, unlocked the door, and started to enter. D. D., slammed the door shut but the assailant pushed the door open and entered the house. D. D., ran into the kitchen where her attacker grabbed her and they struggled. D. D., broke free and switched on a light. She turned and faced her assailant, who was approximately four feet away. The man jumped at D. D., turned off the light, and forced her to the floor where he raped her. D. D., later identified the defendant as the rapist.

## I.

The defendant was singled out in a lineup by the victim on September 21, 1977, eleven days after the crime occurred. Prior to the first trial of this cause, defendant filed a motion to suppress, asking that the victim's identification of defendant as the rapist be suppressed at trial. On April 19, 1978, the State stipulated that the lineup had been impermissibly suggestive. All evidence concerning the lineup and identification was suppressed. During the trial of the case at bar, the State asked D. D., to make an in-court identification of her assailant. The defense objected and a hearing was held outside the presence of the jury. When the jury returned, the victim was allowed to identify the defendant as the rapist.

In *Harris v. State*, (1980) Ind., 403 N.E.2d 327, we stated:

[2] In-court identifications are admissible where the State can "establish by clear and convincing evidence that the in-court identifications [are] based upon observations" gained independently of any unduly suggestive pre-trial confrontations. *United States v. Wade*, (1967) 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165. Among the factors to be considered in making this determination are:

" * * * the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *United States v. Wade, supra,* 388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165. In *Dillard v. State,* (1971) 257 Ind. 282, 289, 274 N.E.2d 387, 389, we set out additional tests, including: " * * * the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, [and] opportunity to observe particular characteristics of the criminal * * *."

*Id.* at 403 N.E.2d at 329.

The State bears the burden in the trial court of producing "clear and convincing evidence" of an independent basis, *Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193, but in reviewing the lower court's finding we do not reweigh the evidence, but look to the evidence most favorable to the appellant. We accept the trial court's finding if it is supported by sufficient evidence. *Morgan v. State,* (1980)

Ind., 400 N.E.2d 111; *Whitt v. State*, (1977) 266 Ind. 211, 361 N.E.2d 913.

During the hearing, D. D., testified that she turned on a light and was able to see the defendant from a distance of four feet. The light was on for a few seconds. When the light was off, defendant was lying on top of D. D., face to face, for ten minutes. D. D., said her eyes adjusted to the darkness and she was able to determine that the rapist had a beard, though she was uncertain whether it was full or partial. When the defendant left, she saw him walk through her well lighted backyard. When the police arrived, D. D., described the rapist as a black male, 5'6" to 5'7", slender build, beard, and wearing a white T-shirt. On the stand, D. D., testified that the defendant was now heavier and had not been wearing glasses. After defendant took the stand he admitted that he gained about forty pounds since the time of the initial arrest. He also said he did not always wear glasses and that they were not prescription lenses.

We feel D. D., had an independent basis for making the in-court identification. She was alone with her assailant for 10–15 minutes in close proximity, much of the time face to face. D. D., saw her assailant both in the bright light of her dining room and her backyard. D. D., made no inaccurate identification of her assailant and has never failed to identify the defendant as her attacker. The only discrepancy is that one officer, Officer Loney, called to D. D.'s home, said she would not describe the defendant as "slender." The term "slender" is one open to many definitions and this comment has not affected the independent basis for identifying the defendant. There is no error on this issue.

## II.

Defendant's attorney at the first trial and on appeal requested permission on November 13, 1979, to withdraw from the case because he could no longer effectively represent the defendant. Counsel and defendant differed over trial strategy. The trial court granted permission to withdraw and informed defendant that trial would begin on March 12, 1980. The judge also informed the defendant that the trial would proceed with or without counsel and discovery was closed at that point.

The trial date was changed to March 18, 1980. On March 10, 1980, new counsel made his appearance on behalf of defendant. The attorney acknowledged the judge's order from November, 1979, but orally requested to submit a notice of alibi. The judge told the attorney it would be advisable, for the record, to file the notice in writing but still denied the request to interject alibi into the trial. Defendant never filed an alibi notice but insists here that it was error for the judge not to admit it into the trial.

Ind.Code § 35–5–1–1 (Burns Repl. 1979) covers the use of alibi in a trial. § 35–5–1–1 reads, in part, as follows:

"Whenever a defendant in a criminal case in a court other than that of a justice of the peace shall propose to offer in his defense evidence of alibi, the defendant shall, not less than the ten [10] days before the trial of such cause, file and serve upon the prosecuting attorney in such cause a notice in *writing* of his intention to offer such defense. . . ."

(emphasis added).

Oral notice of alibi was given only eight days before the trial. The notice was never put into writing. Defendant has not shown, as an exception to § 35–5–1–1, good cause for his failure to file notice of alibi under Ind.Code § 35–5–1–3. Defendant had ample time to file his notice of alibi. He claims that new counsel made his first appearance only eight days before the trial but we have held that a defendant acting as his own counsel must be held to the established rules of procedure, the same as trained legal counsel. *Smith v. State*, (1977) 267 Ind. 167, 174, 368 N.E.2d 1154, 1158. In addition, defendant and his counsel failed to satisfy the statutory requirements of submitting the notice in writing; therefore, the trial court was justified in excluding alibi evidence. *See Mitchell v.*

*State*, (1979) Ind., 398 N.E.2d 1254, 1257; *Stapp v. State*, (1972) 259 Ind. 330, 333, 287 N.E.2d 252, 253–54; *Fields v. State*, (1977) Ind.App., 367 N.E.2d 36, 38.

## III.

Between the time of the crime and the time of the trial, defendant gained a considerable amount of weight. When the State saw the defendant, it moved for additional discovery in order to measure the weight gain. The motion was granted over the defendant's objection. The defendant argues that this violated the mutual reciprocity concept of discovery since discovery was officially closed in November, 1979. The defense in particular points to the trial court's refusal to admit alibi evidence as proof of the non-reciprocal use of discovery.

■ We have held that the defendant did not satisfy the statutory requirements of presenting an alibi defense; therefore, that exclusion is not relevant in deciding whether or not the judge abused his discretion. The defendant cannot point to that as harm since he did not follow the proper procedure for admitting alibi evidence.

■ Ind.R.Tr.P. 26(B) allows a wide scope of discovery. The conduct of discovery in criminal cases is left largely to the discretion of the trial court. *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223; *Cochran v. State*, (1978) 269 Ind. 157, 160, 378 N.E.2d 868, 870; *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 429, 317 N.E.2d 433, 438. Defendant's build and weight, at the time of the rape, were relevant to the victim's description of her assailant. The State did not notice the weight gain until the trial started. The judge, in promoting fairness and justice, allowed the State to weigh the defendant. His weight was not privileged information. Defendant has not shown that his weighing resulted in harmful error, nor has he shown us that he was denied additional discovery. There is no error on this issue.

## IV.

When D. D., took the stand, a juror named Eppert recognized D. D., as someone she had once worked with at a factory. Eppert mentioned this fact to some of the other jurors, one of whom recommended she inform the bailiff. Eppert was brought into court, out of the presence of the other jurors and in the presence of the prosecutor and appellant's counsel. Eppert was then questioned about her familiarity with the victim. Eppert explained that she knew D. D., only by her first name and had exchanged only a few words with her during the time they worked at the same factory. The last time Eppert saw D. D., was several months before the rape. The trial court decided to replace Eppert with an alternate juror, even though he felt no cause had been shown, just to be on the safe side.

Defendant argues that Eppert's recognition of D. D., and the fact that Eppert told this to other jurors raises the likelihood the jury would be biased in D. D.,'s favor. Since the existence of this situation became known only after the jury had been sworn, defendant believes a mistrial is the . only adequate protection for a fair trial.

■ In order for this court to find that the trial court abused its discretion in denying defendant's motion for a mistrial, we would have to find that the defendant was placed in a position of substantial peril. *Shepard v. State*, (1980) Ind., 404 N.E.2d 1, 6; *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 158.

■ Here, Eppert was replaced by an alternate juror. In addition, the judge polled each juror in order to find out to what extent Eppert may have influenced his or her judgment. Several jurors were not aware that Eppert once knew D. D.; of the jurors who did know this, all stated that Eppert said only that she recognized D. D., as someone she once worked with at a factory. In light of the non-prejudicial remarks of Eppert, it was reasonable for the court to believe that the jury would still act impartially. The trial court did not abuse its discretion in denying defendant's motion for mistrial. *Shepard v. State*, (1980) Ind.,

404 N.E.2d 1; *Avery v. State*, (1978) 269 Ind. 432, 381 N.E.2d 1226; *Bradberry v. State*, (1977) 266 Ind. 530, 364 N.E.2d 1183.

### V.

During redirect examination, the prosecution questioned D. D., about therapy she underwent following the rape. She testified that the purpose of the therapy was to help her accept what had happened and enable her to lead a normal life. She also testified that the therapy helped her recall the events of the night she was raped. D. D., stated that prior to the therapy she had blocked out certain things. Defendant objected to this line of questioning, stating that D. D., was relying on the therapist's opinion as to why she sought therapy and also that she had no first hand knowledge of memory blocking.

■ We first note that the scope and extent of redirect examination is a matter within the trial court's discretion. *Woodford v. State*, (1980) Ind., 405 N.E.2d 522, 524; *Fortson v. State*, (1978) 269 Ind. 161, 170, 379 N.E.2d 147, 153; *McDonald v. State*, (1976) 264 Ind. 477, 483, 346 N.E.2d 569, 573. We will not disturb the court's ruling absent an abuse of discretion. It is also true that the scope of redirect examination is to be directed to answering any new matter drawn out during cross-examination. Once a party opens a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination.

■ Cross-examination of D. D., brought out the fact that her recollection of the rape was much clearer then than it was on the night it happened. The State, on redirect, attempted to show the jury why D. D., could remember the events better. D. D., testified that she blocked out certain events but after the therapy she could then recall the incident clearly. D. D., may have been taught the concept of memory blocking but the fact that she "blocked" out certain events was within her knowledge. Also, she must have known why she sought therapy; she did not have to rely on a therapist's opinion when she explained this

to the jury. The testimony given on redirect examination goes to her credibility as a witness, which is determined by the jury, not this Court. *Hill v. State*, (1979) Ind., 394 N.E.2d 132, 135; *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659; *Pollard v. State*, (1979) Ind., 388 N.E.2d 496, 501. We cannot say that the trial judge abused his discretion by permitting this testimony. There is no error here.

### VI.

The last argument deals with the sufficiency of the evidence. Defendant concedes that the State established a *prima facie* case sufficient to withstand attack on appeal through the testimony of D. D., that someone broke into and entered her residence and raped her. Defendant contends that the evidence is not sufficient to prove that he was the person who committed these acts.

■ Our standard of review regarding sufficiency questions is the same in all cases. We will not reweigh the evidence, judge the credibility of witnesses, or resolve conflicts in the evidence. To do so would usurp the function of the jury. Rather, we will look to that evidence most favorable to the State to determine if there was substantial evidence of probative value from which the jury could have found the defendant guilty beyond a reasonable doubt. *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902, 904; *Hauger v. State*, (1980) Ind., 405 N.E.2d 526, 528; *Ruetz v. State*, (1978) 268 Ind. 42, 49, 373 N.E.2d 152, 156.

■ Defendant's presence at the scene of the crime hinges on D. D.'s testimony. The testimony of the victim may, by itself, be sufficient to support a conviction for rape. *Bledsoe v. State*, (1980) Ind., 410 N.E.2d 1310, 1317; *Lottie v. State*, (1980) Ind., 406 N.E.2d 632, 636; *Sizemore v. State*, (1979) Ind., 395 N.E.2d 783, 784–85. The victim's testimony was for the jury to believe or disbelieve as they chose and to assign to it whatever weight they deemed appropriate. *Bledsoe, supra*, 410 N.E.2d at 1317; *Lock v. State*, (1980) Ind., 403 N.E.2d

1360, 1373; *Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953, 956. We have already held that D. D., had a sufficient independent basis in identifying the defendant as her assailant. The defendant points to the vagueness of the rapist's description which D. D., gave to the police. D. D., testified that she remembered more details at the time of the trial than she did initially because of the therapy she received. In addition, the police at the time thought D. D., was too hysterical to be of much use that night. These comments by defendant only point to facts in the evidence which present areas of credibility for the jury to determine. They do not present to us an issue regarding sufficiency. There is sufficient evidence to support the defendant's conviction by the testimony of the rape victim.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, J., concur.

HUNTER, J., dissents with separate opinion in which PRENTICE, J., concurs.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. The state simply failed to produce "clear and convincing" evidence to establish that the victim had a basis for her in-court identification, independent of the pretrial confrontation which the state concedes was impermissibly suggestive. Her in-court identification of defendant consequently should not have been permitted. The majority opinion, in concluding otherwise, stands in irreconcilable conflict with *Holt v. State*, (1979) Ind., 396 N.E.2d 887 (Givan, C. J., and Pivarnik, J., dissenting).

Here, the state stipulated that a lineup it had conducted eleven days after the crime, wherein the victim had singled out defendant, was impermissibly and unconstitutionally suggestive. The record indicates the state's stipulation followed from defendant's motion to suppress the pretrial identification on the basis that the victim was told a "suspect" was in the lineup, that the victim was unable to identify defendant at one lineup, and that a second lineup involving participants with vastly dissimilar physical characteristics culminated in the victim's identification of defendant.

Due to the state's stipulation, the question whether the victim should have been permitted to make an in-court identification is governed by the well-established guidelines and rules laid down in *Neil v. Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Stovall v. Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; and the case progeny thereof. *See, e. g., Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193.

At issue in cases where an unnecessarily suggestive pretrial confrontation has occurred is the question whether a "substantial likelihood of irreparable misidentification" has followed from the pretrial confrontation. *Neil v. Biggers, supra; Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Swope v. State, supra; Holt v. State, supra.* In order for a subsequent in-court identification to be admissible, the state has the burden of producing "clear and convincing" evidence that, independent of the unconstitutional pretrial confrontation, the witness has a basis for the identification made in court. *Id.*

As has been repeatedly stated, the question whether an "independent basis" exists in fact is resolved by examining the "totality of the circumstances" surrounding the unnecessarily suggestive pretrial identification, as well as the witnesses' opportunity to observe the perpetrator at the scene of the crime. *See, e. g., Love v. State*, (1977) 266 Ind. 577, 365 N.E.2d 771; *Jones v. State*, (1975) 263 Ind. 555, 334 N.E.2d 689. As Chief Justice Givan explained in *Jones v. State, supra*:

"As pointed out by this Court in *Dillard v. State*, (1971) 257 Ind. 282, 274 N.E.2d 387, 27 Ind.Dec. 346, the test of the admissibility of the identification focuses attention on two different sets of facts; (1) the facts bearing on the confrontation during the identification itself; (2) the facts bearing on how good a chance the witness had to observe the perpetrator of

the crime to the extent that any suggestiveness in an improper confrontation could be resisted by the witness and that he could, nevertheless, make an accurate decision as to the identification of the suspect." 263 Ind. at 556, 334 N.E.2d at 690.

The factors to be considered in examining the "totality of the circumstances" were outlined in *Neil v. Biggers, supra*:

"We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

In *Holt v. State, supra*, which involved factual circumstances remarkably similar to the instant case, this Court reversed the defendant's conviction for the failure of the state to establish an independent basis by clear and convincing evidence.

*Holt* involved the murder of Edward McGuire. He and his wife had returned to their home at midnight one June night in 1977 to discover lights were on in their house. After they entered, a struggle ensued in which Edward sustained his fatal injuries. Mrs. McGuire's opportunity to observe the attacker was detailed by Justice DeBruler:

"She had observed the attacker twice during the episode, once when she first entered under lights in a bedroom when he was about nine feet away for a period of about *fifteen seconds,* and again as he ran past her on his way out." *Id.,* Ind., 396 N.E.2d at 888 [emphasis added].

Based on the rules heretofore enunciated, Justice DeBruler analyzed the totality of circumstances and found them inadequate to establish a basis independent of the impermissibly suggestive confrontation which had occurred in *Holt*:

"The opportunity of Mrs. McGuire to view the attacker existed, but was very limited. It came late at night after an evening out. When Mr. McGuire first left the car to enter the house, Mrs. McGuire became anxious and attempted to dissuade him from going inside. When she did enter she first viewed the attacker while he was struggling with her husband. Her view of him in this state of emergency lasted for only a few seconds and then she went to summon help. The next time she saw him was as he ran by her. Her verbal descriptions of the attacker had been consistent with the appearance of appellant, but were very general in nature. The first positive identification of appellant as the attacker did not occur until ten months after the crime. The witness' explanation of her reason for not making an identification of appellant at the first showup on June 3 was that she was in a state of shock, and is a reasonable one. However, that same explanation for her failure to identify appellant on June 23 is less supportable, as at that time she was in the safety of a police station, in a room separate from appellant, and had agreed to view a suspect. And there is no explanation offered at all as to how she was able to recognize appellant at trial as the killer when his appearance by that time had been altered by the shortening of his hair and removal of his beard." *Id.* at 889.

The facts and circumstances of the instant case present a less compelling argument for the existence of the necessary "independent basis" than those found wanting in *Holt.*

Whereas in *Holt*, the witness initially viewed the attacker for a period of fifteen seconds in the lighted house, the victim in the instant case had only "a few seconds" in the light of the house to view the perpetrator. The term "a few seconds," which had been employed by the victim at a pretrial deposition, was clarified by her at trial to mean "ten seconds."

In both *Holt* and the instant case, the witnesses had a second opportunity to view the perpetrators. In each instance, the observation period was brief. In *Holt*, the attacker ran past Mrs. McGuire at the entrance to the house, where she had gone to cry for help. Here, it occurred as the assailant fled through the victim's back yard. For a "few seconds," the victim testified that, in the illumination of nearby street lights, she observed the person walking away from her. The victim stated that in this second opportunity to view the perpetrator, she observed his back and his profile as he crossed the fence at the back of the yard.

Unlike *Holt*, a third observation period is at issue here. The victim testified that shortly into the ten-minute period during which the rape occurred, her eyes adjusted and she was able to "see his face and distinguish his features." Notwithstanding her testimony, however, the only identifying facial characteristic which she ever provided to police was the fact that the perpetrator had a beard. When police inquired whether the beard was "full or partial," the victim was unable to recall.

Similarly, the complete description of the perpetrator which the victim gave police, as in *Holt* and *Neil v. Biggers, supra*, was "very general in nature." *Holt v. State, supra*, at 889. Here, the only characteristics the victim could attribute to her assailant was that he was a "black male, 5'6" to 5'7" tall, slender build, beard, unknown if full or partial, and wearing a white T-shirt." As the majority has acknowledged, investigating Police Officer Lorraine Loney stated that defendant could not be described as "slender," as observed shortly after the crime. Not, insignificantly, Officer Loney's report of the crime also stated that during the brief time when the light switch was "on," the victim "was unable to get a good look at him"; in addition, the report stated the "rape attempt [was] not completed."

Inconsistencies and equivocations in a witness's version of events shortly after a crime vis-a-vis his or her testimony at trial do not *ipso facto* establish that an "independent basis" is lacking; credible explanations exist for inconsistencies, hysteria being one. But the equivocal and inconsistent nature of the testimony must be considered as part and parcel of the totality of circumstances, which here include: (1) the limited opportunity to view the perpetrator, both in terms of time and lighting conditions, (2) the general nature of the description provided police, and (3) the excited circumstances in which the opportunity to observe occurred.

In conjunction with these circumstances, we are required to focus on yet another factor—and a very significant one. Just as the witness in *Holt v. State, supra*, the victim here was unable to identify defendant at the first confrontation arranged by police. Here, the victim did not identify defendant until the second lineup arranged by police, which was part and parcel of the pretrial procedures which the state stipulated were "impermissibly suggestive."

This latter factor takes us to the heart of the question before us. As Justice Powell explained in *Neil v. Biggers, supra*:

"Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States*, 390 U.S., at 384, 19 L.Ed.2d 1247, 88 S.Ct. 967 [at 971]. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. *It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in Foster.* [*Foster v. California*, (1969) 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402.] Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and *unnecessar-*

*illy suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous."* 409 U.S. at 198, 93 S.Ct. at 381–2, 34 L.Ed.2d at 410–11 [emphasis added; footnote omitted].

It is the danger that irreparable misidentification will follow from a suggestive confrontation that requires the state to produce "clear and convincing" evidence to prove that any subsequent in-court identification is independently based. Here, as in *Holt*, the totality of circumstances simply does not render "clear and convincing" the indication that an independent basis exists. Only after the impermissibly suggestive confrontation was arranged by police did the victim's ability to identify defendant gain particularity. In the face of that circumstance, together with the other details which compose the "totality of circumstances" before us, the due process dictates of *Neil v. Biggers, supra,* and *Foster v. California,* (1969) 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, constrain us. As those constitutional guarantees were implemented in *Holt v. State, supra,* so also it must necessarily be concluded that the state failed to satisfy its burden of proof. The evidence that an independent basis in fact existed for the victim's in-court identification simply was not "clear and convincing." *Compare, Harris v. State,* (1980) Ind., 403 N.E.2d 327; *White v. State,* (1979) Ind., 397 N.E.2d 949; *Young v. State,* (1979) Ind., 395 N.E.2d 772. The trial court erred in admitting the victim's in-court identification over defendant's objection.

For the foregoing reasons, the judgment of the trial court should be reversed and defendant should be granted a new trial.

PRENTICE, J., concurs.