Earl Lynn JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 582S185.

Supreme Court of Indiana.

Nov. 9, 1983.

Kenneth T. Roberts, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Earl Lynn Johnson was charged with kidnapping, a class A felony, Ind.Code § 35–42–3–2 (Burns 1979 Repl.), rape, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), criminal deviate conduct, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979 Repl.) and robbery, a class B felony, Ind. Code § 35–42–5–1 (Burns 1979 Repl.). He was found guilty as charged of these offenses by a jury. The trial judge imposed enhanced sentences of forty years for the kidnapping, forty years for the rape, forty years for the criminal deviate conduct and fifteen years for the robbery. These sentences were ordered served consecutively with defendant receiving a total sentence of one hundred and thirty-five years imprisonment. He appeals, raising several issues:

(1) Whether there was sufficient evidence to support the convictions.

(2) Whether certain exhibits entered into evidence by the State should have been excluded as cumulative and prejudicial or as the fruits of an unlawful arrest.

(3) Whether the trial court should have excluded the victim's in-court identification of the defendant as the product of an unnecessarily suggestive pre-trial confrontation.

(4) Whether the trial court erred by refusing defendant's tendered final instructions on lesser included offenses.

(5) Whether the trial court erred by giving an instruction tendered by the State on the subject of resistance.

(6) Whether the sentence imposed was erroneous.

The victim, I.V., testified that after leaving the Waffle House Restaurant in Indianapolis where she worked as a waitress and part-time manager at 1:00 a.m. on July 26, 1981, she stopped at a gas station. Defendant approached her as she stood outside her car there in a well-lit area and asked her for a light and a ride several times. When she refused, he pointed a small silver gun at her and told her to get in her car. She complied and he got in the back seat.

At defendant's direction, and with the gun pointed at her, I.V. drove to a nearby alley. He demanded her money and she gave him "three (3) or four (4) five's (5's) and a one (1) or two." After placing the

money in his front pants' pocket he ordered her to remove part of her clothing and to get in the back seat with him. Defendant then raped her and forced her to perform fellatio on him. He asked I.V. for cigarettes, and she gave him a package of "Kool Milds." He also asked for her name and phone number. She wrote down the fictitious name "Linda" and the phone number of the Waffle House on a slip of paper torn from an envelope in the car. Defendant took both the cigarettes and the piece of a paper and ordered I.V. to drive several blocks where he got out of the car.

I.V. immediately drove the short distance back to the Waffle House, returning there at approximately 1:30 a.m., and informed Wilbur Tyler, an off-duty sheriff's deputy who was a customer there, about the assault. After listening to her description of her assailant as about five feet, six inches tall with a small build, having a medium afro, and wearing a white tank top shirt, cut-off blue jeans and white tennis shoes, Deputy Tyler telephoned the police dispatcher and left immediately in his unmarked car to attempt to locate the assailant.

Deputy Tyler drove to the intersection of 49th and Norwaldo where the victim had reported that the defendant had gotten out of the car. There he spotted a man exactly matching the description provided by I.V. He identified himself as a police officer, displayed his badge and asked defendant if he would accompany him. After responding "sure", defendant got into the car, whereupon Tyler advised him of his rights. Tyler drove the defendant to the Waffle House, returning less than ten minutes after he left, at approximately 1:40 a.m.

Upon seeing the defendant emerge from the car, I.V. exclaimed, "That's him." He was brought to the window of the restaurant where I.V. observed him from inside at a distance of three to five feet. She reaffirmed her identification and defendant was then told by police officer Douglas Scott that he was being placed under arrest. A search of his front pants' pocket yielded sixteen dollars (three five dollar bills and a one dollar bill), a package of "Kool Milds" and a slip of paper with the name "Linda" and a phone number on it. I.V. identified this at trial as the same piece of paper she had given her attacker.

The defendant proffered an alibi defense at trial, testifying that he had spent the evening with a friend, visiting and drinking, and had not committed any of the offenses charged. That friend, Robert Woods, also testified that defendant had spent the day with him and that defendant was arrested at approximately 1:30 a.m. as he left Woods' home at 46th and Norwaldo.

## I.

Defendant first argues that there was insufficient evidence that he committed these crimes to support the jury's verdict. In reviewing such a claim of evidentiary insufficiency, this Court neither weighs the evidence nor resolves questions of credibility, but only looks to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State,* (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

The victim's account of the crime together with the evidence that defendant exactly matched the victim's description of him, was found in the vicinity of the crime moments after it occurred and was reported, and had on his person the amount of money taken from the victim, a package of the same kind of cigarettes and the note that the victim had given her assailant, provided sufficient evidence of probative value from which a reasonable jury could have concluded that defendant was guilty beyond a reasonable doubt.

## II.

Defendant next contends that the trial court erred in overruling his objections

to certain evidence offered by the State. After Officer Scott informed defendant that he was under arrest and he was handcuffed, photographs of him were taken by another officer at the scene. These two photographs were offered at trial by the State as evidence. Defendant argues that these pictures were cumulative of testimony concerning his appearance at the time of his apprehension and were prejudicial since they portrayed defendant "in a state of obvious restraint and arrest." While competent evidence may be excluded where its probative value is outweighed by its tendency to prejudice, this balancing is to be done in the discretion of the trial judge. *Powers v. State,* (1978) 177 Ind.App. 560, 380 N.E.2d 598. These photographs were graphic, probative evidence that defendant matched perfectly the physical description provided by the victim. The trial judge did not err by admitting this evidence.

Defendant also claims that these pictures, as well as the sixteen dollars, package of "Kool" cigarettes and slip of paper with the name and phone number written on it were improperly admitted because they were the products of an unlawful arrest. He claims that he was arrested at the time he got into the car with Deputy Tyler although no formal words of arrest were recited at that point. Contending that this restraint lacked probable cause, he argues that the arrest was unlawful and any evidence gathered pursuant to it must be excluded. The State contends that there was sufficient probable cause to effect the arrest but assumes that the arrest occurred after the defendant was positively identified by I.V. at the Waffle House.

We may assume, in agreement with the defendant, that he was placed under arrest at the time he was stopped by Deputy Tyler and got into Tyler's car. However, we find that there was probable cause for this arrest, and thus evidence gained thereafter was properly admitted. The probable cause necessary for an arrest has been defined as "those facts and circumstances known to the arresting officer that would warrant a reasonable man to believe that a crime had been committed by the suspect." *Pawloski*

*v. State,* (1978) 269 Ind. 350, 352–53, 380 N.E.2d 1230, 1232. *See also, Akins v. State,* (1981) Ind., 429 N.E.2d 232.

■ Deputy Tyler was warranted in believing that this defendant had committed a crime since he met the detailed physical description provided by the victim and was present on the street at 1:30 a.m. in the vicinity of the crime, several minutes after the victim reported the incident. Therefore, the arrest was lawful because it was based on probable cause and the evidence gained in a search incident to the lawful arrest was properly admitted.

### III.

The defendant alleges that the trial court erred by allowing the in-court identification of him by the victim because it was the result of an unnecessarily suggestive pretrial confrontation. Claiming that the victim viewed him on a rainy night while she was upset and when he was the only person in custody, had just stepped out of a police car and was being watched by two police officers, the defendant argues that the show-up procedure employed here was impermissibly suggestive and tainted the subsequent in-court identification.

■ An identification procedure which is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violates a defendant's right to due process. *Simmons v. United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440. However, we have held that a confrontation occurring immediately after the commission of a crime is not always unnecessarily suggestive despite the suggestive factors unavoidably involved and may be permissible because of the value of the witness's observation of a suspect while the image of the offender is fresh in her mind. *Jones v. State,* (1970) 253 Ind. 480, 255 N.E.2d 219; *McPhearson v. State,* (1969) 253 Ind. 254, 253 N.E.2d 226.

■ The testimony of the victim and the police officers established that I.V. viewed the defendant from a very close distance in adequate lighting. He was not handcuffed at that time and was accompanied only by Deputy Tyler. The victim had observed and clearly seen the defendant at the gas station before he abducted her. She testified that the station was "lit up like it is here in the Courtroom" and that the defendant stood "right in [her] face." We find that the confrontation procedure employed in the instant case was not impermissibly suggestive and that there was no error in permitting the in-court identification by the victim of the defendant.

### IV.

Jury instructions concerning the offenses of battery and criminal confinement were tendered by the defendant but were refused by the trial judge after objection by the State. Defendant claims that this refusal to instruct the jury on these lesser included offenses of rape, criminal deviate conduct and kidnapping was error.

■ In determining whether it is necessary to instruct on lesser included offenses, a trial judge must first decide whether the lesser offense is actually "included" within the crime charged. *Lawrence v. State,* (1978) 268 Ind. 330, 375 N.E.2d 208. The State concedes that test is met here. The judge must then further determine if there was "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense." *Hash v. State,* (1972) 258 Ind. 692, 698, 284 N.E.2d 770, 774. *See also, McNary v. State,* (1981) Ind., 428 N.E.2d 1248; *Lawrence, supra.*

■ The dearth of any such evidence here relieved the trial judge from the obligation of instructing the jury as to the lesser included offenses. Defendant proffered an alibi defense, claiming that he was not the perpetrator of these offenses and presenting testimony in support of this defense. He presented *no* evidence that some crime occurred but not in the manner in which I.V. testified. Thus, as we found in

*McNary, supra,* defendant was either guilty of the charged offenses or was not guilty at all. Defendant's tendered instructions were not applicable to the evidence adduced at trial and were properly refused.

### V.

Defendant next assigns as error the giving over his objection of an instruction tendered by the State which described the amount and type of resistance required of a woman assaulted by a man with the intent to commit rape and which informed the jury that this was a question of fact for them to determine. He argues that resistance by the victim was not an issue in this case, and therefore this instruction was not applicable and was erroneously given.

■ The victim did testify, however, that defendant put the gun down in the back window during the time of the rape and the criminal deviate conduct, retrieving it at some later point from beneath the back seat. Thus, some question about the victim's duty to resist the attack may have legitimately arisen in the minds of the jurors and the trial court was therefore warranted in giving an instruction on the degree of resistance required of the victim.

### VI.

Defendant finally argues that the sentence he received is erroneous. The trial judge enhanced the presumptive sentence for each of the three class A felonies to forty years and increased the basic sentence for the class B felony to fifteen years. He ordered these sentences to be served consecutively for a total of one hundred and thirty-five years. Defendant was twenty-two years of age at the time of sentencing.

Our scope of review is prescribed by Rule 2 of the Rules for the Appellate Review of Sentences:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

It is evident from the rule that the trial court is afforded the broadest of discretion in making the sentencing decision within the confines of the statutory limitations. However, that discretion is not per se unreachable on appeal. *Bish v. State,* (1981) Ind., 421 N.E.2d 608. Here defendant could have been given a maximum sentence of one hundred and seventy years; he could also have received a minimum sentence of twenty years. The trial court chose a total of one hundred thirty-five years.

 Appellant's history of criminal activity included convictions for disorderly conduct, three charges of drunkenness, and one charge of shoplifting. He was arrested for battery but no conviction resulted. He violated probation in failing to pay a fine and costs. The court noted that appellant has persisted in asserting his innocence of the instant crime during the sentencing process and indicates no remorse. In the pre-sentence report appellant admitted being expelled from high school for fighting. The offenses of which appellant stands here convicted were violent ones against the person, and show a vicious disregard for the nearest and dearest interests of others. With the exception of the author of this opinion, the Court is in agreement that a reasonable person could find the sentence of one hundred thirty-five years appropriate to these particular offenses and this offender, and therefore concludes that the sentence is not manifestly unreasonable.

My difference with the rest of the Court on this issue revolves about the following considerations. Defendant's personal history demonstrates a family life appointed by instability, alcoholism and physical abuse, in substandard housing in areas of high delinquency. Three of the other ten children in the family had records in the juvenile system and appellant's father had a criminal record. Appellant had, however, no prior convictions for felonies or for crimes involving violence against others. He had not previously served any time in an adult penal institution.

The offenses of which defendant stands convicted are to be sure of the most egregious class, involving despicable invasions of the person of the victim, and inflicting upon her severe humiliation, anxiety, and debilitating psychic trauma. At the same time, however, I know as a judge that these same offenses are often committed in such a manner as to visit even greater injury upon the victim. Rape and robbery are often accompanied by more injurious exploitive conduct including actual physical injury by beating, kicking, stabbing, shooting, or choking. They involve death threats to children and others within close proximity. The restraint in kidnapping often involves blindfolding and gagging the victim. It is not uncommon for the victim to be tied up or locked in a small area or trunk of a car. Restraint under these circumstances often lasts for many hours and the victim is abandoned in a position of further danger. None of these aggravating factors are present here. I agree that a severe sentence involving confinement in a penal institution is warranted and justifiable, however the facts and circumstances describing this particular offense and this particular offender simply do not justify in my mind so severe a punishment as a one hundred and thirty-five year sentence.

Accordingly, I would order that the defendant be sentenced to thirty years for the kidnapping, thirty years for the rape, thirty years for the criminal deviate conduct and ten years for the robbery, and that the sentences for the rape and the criminal deviate conduct be served consecutively to each other and concurrently with the sentences for the kidnapping and the robbery for a total term of sixty years imprisonment. Quite apparently the rest of the Court does not agree with this proposed modification of sentence.

It is the order therefore that the convictions be affirmed and in accordance with the majority opinion of the Court, the sentences imposed by the trial court totalling

one hundred thirty-five years are likewise upheld.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.