**Terry L. HINER, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–1083A348.**

Court of Appeals of Indiana,
Third District.

Nov. 8, 1984.

Rehearing Denied Jan. 22, 1985.

---

Thomas A. Murto, Murto & Holbrook, Goshen, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Following a jury trial in the Elkhart Circuit Court, Terry L. Hiner was found guilty of rape, a Class B felony. He brings this appeal raising seven issues which we rephrase as follows:

    I. Whether the court erred by denying cross-examination of the complaining witness as to her general drug use.

   II. Whether the court erred by excluding evidence of the existence of

another person fitting Hiner's description.

III. Whether a pretrial identification procedure was impermissibly suggestive and, if so, whether it tainted an in-court identification.

IV. Whether the conviction was supported by sufficient evidence.

V. Whether certain jury instructions were erroneously given.

VI. Whether the state failed to disclose exculpatory evidence.

VII. Whether the court improperly refused to include certain information in and excise other information from the pre-sentence report.

*I. Cross-examination of complaining witness as to drug usage.*

■ Hiner contends it was error for the court to sustain the state's objection to Hiner's cross-examination of the prosecutrix as to her drug usage prior to June 4, 1982, the date of the rape. Hiner's counsel argued at trial that such a line of inquiry was relevant:

"... because we believe that we can offer evidence in this case through witnesses who have been listed as witnesses to the effect that the periodic usage of controlled substances can affect one person's ability to observe, to relate that which they observed, to affect their short- and long-term memory and recall, all of which would go to the credibility of this witness."

Record at 448. Hiner contends the court's action denied him the right of full, adequate and effective cross-examination guaranteed by the federal and state constitutions. *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475.

The prosecutrix testified on direct examination that she left her house on the morning of June 4, 1982 to walk to the house of a friend, Joann Myers. During her walk, Hiner drove up in his pickup truck and asked the prosecutrix where she was going

and if she wanted a ride. She first refused but then accepted the ride after Hiner asked if she would like to smoke some marijuana. Hiner did not drive the prosecutrix to Myers' house but instead drove to an area away from town where the rape occurred.

Hiner and the prosecutrix did not smoke marijuana together that day. The only testimony in the record as to the prosecutrix' drug usage was her negative response to a question asked on cross-examination as to whether she had had any controlled substances on the morning of June 4, 1982. The court sustained the state's objection to questions concerning her drug usage prior to that date.

We were presented with a similar issue in *Finney v. State* (1979), 179 Ind.App. 316, 385 N.E.2d 477 (Staton, J., dissenting). In *Finney:*

"[O]n direct examination, the prosecutor asked the witness whether she had smoked marijuana on the day she was raped, and she replied that she had not. On cross-examination, the defendant sought to elicit from the witness whether she had ever smoked marijuana to which the State objected as being outside the scope of direct examination. The trial court properly sustained the State's objection. Clearly, the trial judge has broad control over the scope and content of cross-examination when it is directed into such highly emotive areas as narcotics use, which carry with their very nature serious dangers of undue prejudice. Questions pertaining to the use of drugs when asked for the purpose of attacking the credibility of the witness are proper to show that at the time of the event to which the witness testified, her powers of observation and memory were impaired so that her recollection and account of the experience might be inaccurate. In *Commonwealth v. Gaddy* (1976), 468 Pa. 303, 362 A.2d 217, prohibiting defense counsel from asking the prosecutrix 'Do you take drugs?' was held not to be an abuse of discretion on the grounds that testimony of that sort

only serves to interject an extraneous issue into the trial, thereby diverting the jury from its principal duty—the determination of the guilt or the innocence of the accused. *See also* 65 A.L.R.3d 705; 81 Am.Jur.2d *Witnesses* Section 546 for cases excluding questions on general drug usage."

385 N.E.2d at 481.

Hiner is correct in stating that "if a defendant is not allowed to impeach a crucial state witness' credibility, a constitutional error has been committed." However, Hiner has not shown he was denied effective cross-examination as was shown in cases he cites. In *Lusher v. State* (1979), 181 Ind.App. 63, 390 N.E.2d 702, the prosecution witness was an informant who made the purchase of controlled substances from Lusher. On voir dire examination of the witness out of the presence of the jury it was established that the witness' own heavy drug usage was causing him to hallucinate on occasion. We held it was an abuse of the court's discretion to prevent the defendant from presenting to the jury evidence of the witness' hallucinations so that the jury might better assess his credibility. In both *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 and *Pfefferkorn v. State* (1980), Ind.App., 413 N.E.2d 1088 the court's error in restricting the scope of the cross-examination was with respect to the testimony of a witness who the defense intended to show had ulterior motives for his testimony. "A witness' bias, prejudice or ulterior motives are always relevant in that they may discredit [the witness] or affect the weight of his testimony." *Pfefferkorn, supra,* 413 N.E.2d at 1089.

Here, Hiner was not attempting to expose the prosecutrix' ulterior motives as in *Davis* and *Pfefferkorn.* Hiner also had not made any preliminary showing, as in *Lusher,* that the witness' prior drug usage had a definite impact on the witness' mental processes thereby outweighing the prejudice caused by interjecting this collateral issue.

Hiner was permitted to vigorously cross-examine the prosecutrix exposing numerous inconsistencies between her pretrial statements and her in-court testimony. The prosecutrix said she did not know the answer to many of the questions asked by Hiner on cross-examination concerning the details of the events surrounding the rape. Hiner effectively reached his goal of impeaching the witness' credibility by exposing gaps in her memory. The prosecutrix' prior drug usage, even had it been established, would have been cumulative as to the issue of her memory and would have been unduly prejudicial. The court, in the exercise of the discretion vested in it, *Schalkle v. State* (1979), 272 Ind. 134, 396 N.E.2d 384, properly sustained the state's objection to questions relating to the extraneous issue of the prosecutrix' prior drug usage.

## II. Evidence of existence of person fitting Hiner's description.

█ Hiner argues in his brief that "Tina Simmons [his step-daughter], would have testified that she was approached by a man very similar in appearance to defendant ... [who] matched many facts of the prosecutrix' description." He claims that because of the court's granting of the state's motion in limine he was precluded from offering this testimony at trial to prove the other person may have committed the rape.

Simmons did testify at trial but nowhere during her testimony does the record reveal any effort by Hiner to introduce or elicit the testimony he claims was erroneously excluded. The state's motion in limine was "granted *except as to 3a,*" (our emphasis). 3a of the motion was the section referring to the possibility "[t]hat the step-daughter of Terry L. Hiner, one Tina Simmons, shall testify in this cause concerning an attempt to be picked up by a person resembling the Defendant driving a truck similar to the Defendant's truck."

At least arguably other portions of the motion that were granted related to Simmons' possible testimony regarding the Hiner look-alike. However, the court's ruling in this case merely precluded Hiner from going into these matters without first

securing permission from the court outside the presence of the jury. Such an order is not a final ruling as to the admissibility of evidence. In the entire record the only reference to Simmons' proposed testimony was in Hiner's motion to correct error and the state's motion in limine. Hiner has failed to present any ground for error because he never offered the testimony he claims was excluded by the court. *See Inman v. State* (1979), 271 Ind. 491, 393 N.E.2d 767.

### III. Pretrial identification.

Debra Flager was called by the state to testify regarding her observations of June 4, 1982. Flager was a school bus driver whose route on that day included a portion of a gravel road just off of which she saw a "baby blue" pickup truck. Because that day was the last before summer vacation for the schoolchildren, Flager was driving the children home early and passed the truck twice around 10:30 in the morning. She testified that upon seeing the truck parked in the lane, with the truck's tail end facing the gravel road, she immediately slowed to approximately 20 m.p.h. to avoid an accident in the event the truck would back out onto the road. Although her view of the scene lasted only a matter of seconds, she was able to identify the truck as a Ford. She saw one person, who had long hair, sitting in the truck with one leg out the door while another person, a man about six feet tall with a curly "Afro" hairstyle was leaning against the open door and the truck. She testified he was wearing dark pants and a light-colored shirt. On her way back past the scene, several minutes later, Flager again saw the truck with its passenger side door open but she did not see the two people.

A week or two after the rape, Detective Barbara Cutter of the Elkhart County Sheriff's Department contacted Flager and arranged to meet her to discuss the events of June 4, 1982. Cutter presented six photographs to Flager for the purpose of attempting to identify the man she had seen standing beside the pickup truck. Five of the photographs were "mug shots" with booking dates visible; the other photograph was of Hiner and was selected by Flager as the person she had seen.

Hiner's counsel objected to the in-court identification of Hiner by Flager arguing the identification would be tainted by the impermissibly suggestive pretrial photographic identification. The trial court judge overruled the objection apparently satisfied that Flager had a sufficient independent basis for the identification apart from the photographic array. Flager then proceeded in court to identify Hiner as the person she had seen next to the pickup truck.

Before considering the merit of Hiner's argument we first wish to admonish his counsel for his distortion of Flager's testimony in the argument section of Hiner's brief. Counsel states:

"About a week after the incident, Detective Cutter went to the home of witness Flager, and after some conversation, which was not specified, presented to the witness a photographic lineup consisting of six photographs. (R. 563, 564, 568). It was admitted as defendant's Exhibit A. (R. 378).

*Debra Flager testified that she 'assumed he was in the pictures ... [she was] just to pick him out of them.'* (R. 568). She testified she could automatically rule out four of the six subjects in the photographic lineup because they were so substantially different from the basic description of the defendant. (R. 550, 551)."

Brief at 46 (our emphasis). Flager's testimony, quoted above, was in reference to counsel's in-court display to her of family photographs in various settings and in which Hiner appeared. As cited out of context by counsel, however, it is made to appear that Flager is referring to the photographic line-up presented to her by Officer Cutter and that she assumed one of the photographs in the line-up was of Hiner and she was simply to pick his out of the six. We cannot condone such a distortion of the evidence.

■ The photographic display used for the pretrial identification was arguably unnecessarily suggestive but other factors convince us the in-court identification was not thereby tainted.

"The practice of exhibiting a number of photographs to a crime victim by police for purposes of identification is not as a general proposition unduly suggestive. It is only when such a display is accompanied by graphic or verbal communications or indications tending unfairly to single out one of the photographs as that of a suspect that such procedures may be condemned as unnecessarily and impermissibly suggestive of guilt."

*Wilson v. State* (1981), Ind., 418 N.E.2d 1150, 1152. Of the six photographs shown to Flager, the one of Hiner is immediately distinguishable from the others which, unlike his, have jail identification numbers on them. We find no evidence that Flager was told by Cutter that the defendant's photograph was among those shown to her. However, that fact is not enough to establish the array was not unduly suggestive. *Head v. State* (1982), Ind., 443 N.E.2d 44.

■ Notwithstanding the suggestive nature of the photographic line-up, we do not believe Flager's in-court identification of Hiner was erroneously allowed.

"A witness who has been subjected to an unnecessarily suggestive confrontation with the accused may nonetheless identify the accused at trial as the perpetrator of the offense if the pre-trial confrontation has not created a 'very substantial likelihood of irreparable misidentification,' *Norris v. State* (1976), Ind., 356 N.E.2d 204, or in other words, if the witness has a basis for his in-court identification independent of the suggestive procedure. *Johnson v. State* (1977), Ind., 359 N.E.2d 525. The factors considered in determining the existence of an independent basis have been set out in several cases, and may be divided into two sets: those dealing with the witness' opportunity to observe the offender, and those relating to the reliability of his recollection of his original observation of the offender. Specific factors in the first group were enumerated in *Parker v. State* (1976) [265] Ind. [595], 358 N.E.2d 110, 112:

'The facts of paramount importance to this question relate to the opportunity of the witness to view the offender at the time of the offense; the duration for which the witness can observe the perpetrator; the distance separating them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party.'

*See also Dillard v. State* (1971), 257 Ind. 282, 289, 274 N.E.2d 387, 389.

The State bears the burden in the trial court of producing 'clear and convincing evidence' of an independent basis, *Swope v. State, supra,* at [263 Ind. 148] 325 N.E.2d [193] 197 [ (1975) ], but in reviewing the lower court's finding we do not reweigh the evidence, but look to the evidence most favorable to the trial court and any uncontradicted evidence favorable to the appellant. We accept the trial court's finding if it is supported by sufficient evidence. *Whitt v. State* (1977) [266] Ind. [211], 361 N.E.2d 913."

*Love v. State* (1977), 266 Ind. 577, 365 N.E.2d 771, 773. Even though Flager had only a matter of seconds in which to view Hiner from, at closest, thirty feet away, the attention she directed to the scene was greater than would have been displayed by simply a passing motorist. Driving a school bus, Flager was immediately concerned about the possibility the truck would back out onto the road. Her attention was also drawn by the unusual presence of the truck on the road where she rarely saw traffic at all. She observed a man next to the truck and was able to describe his hair style (curly hair, afro-type), height (about six feet tall), build (very heavy boned), clothing (dark pants and a light-colored shirt), and position outside the truck (the door was open and one arm was on the door, one arm was on the

pickup truck). She saw a side view of the man's face.

There was sufficient evidence to support an independent basis for the in-court identification. The court's decision to permit the in-court identification was not error.

### IV. Sufficiency of the evidence.

Hiner was convicted of rape as defined in IC 35–42–4–1. At the time of the offense, the statute read in relevant part as follows:

"(a) A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force; ... commits rape, a Class B felony...."

■ Hiner challenges the sufficiency of the evidence to support his conviction under the statute. The only significant argument made by Hiner concerns the sufficiency of the evidence that he was the person who committed the crime. The rest of his argument focuses on minor inconsistencies in the prosecutrix' testimony concerning peripheral matters and lapses in her memory between the time of her original statements to the police and her in-court testimony. We are not swayed by the fact this fifteen year old prosecutrix was unable to recall at trial whether Hiner's truck had a stick shift; that she originally said Hiner drove at a normal speed but at trial said he was traveling in excess of the speed limit; that she originally said she ran from Hiner just before the rape but at trial she could not remember whether she did or not; and that she could not recall how she got over the gate or through the fence to arrive at the point Hiner raped her.

The jury was entitled to consider the gaps in the prosecutrix' testimony in determining her credibility. As an appellate court, however, we will not judge the credibility of the witnesses. *Rowan v. State* (1982), Ind., 431 N.E.2d 805. Instead we will review the evidence only to determine whether there is substantial evidence of probative value to support the jury's verdict, and if there is such evidence, we will

affirm. *Id.* The peripheral inconsistencies argued by Hiner go only to the weight of the evidence and do not establish a lack of evidence to support the elements of the offense.

■ Hiner's argument that there was insufficient evidence to place him at the scene of the crime also must fail. He acknowledges that the uncorroborated testimony of the prosecutrix is sufficient to support a rape conviction. *Dillon v. State* (1981), Ind., 422 N.E.2d 1188. The prosecutrix identified Hiner as the man who raped her. Additionally, Debra Flager identified Hiner as the man at the scene of the crime at the time the prosecutrix testified the rape occurred. The fact that the prosecutrix was not able to describe Hiner's exact features the day after the rape when she made a statement to the police does not rise to the level of a lack of substantial evidence. She specifically knew the man who accosted her by his first name, Terry, having been introduced to him by a mutual friend at a local diner. She spent a considerable amount of time with him in the truck the morning of the rape. Although there were minor errors in her description of him, the description is not so "inherently inconsistent with the undisputed facts and so improbable that it does not meet the test required for a conviction." *Thomas v. State* (1958), 238 Ind. 658, 154 N.E.2d 503. There was sufficient evidence of probative value to support Hiner's conviction.

### V. Jury instructions.

Hiner objected at trial to three instructions read by the court to the jury. Instruction No. 5 states:

"A person may be found guilty of the crime of rape upon the uncorroborated testimony of the victim."

Record at 195. Instruction No. 13 states:

"The Court further instructs you that you should not indulge in purely speculative doubts, and the bare possibility that the defendant may be innocent does not raise a reasonable doubt. The question of the defendant's guilt or innocence

must be determined by each of you in view of your obligation to act honestly and fairly in weighing the evidence and reaching a decision which your oath imposes."

Record at 203. Instruction No. 20 states:

"These instructions do not contain any specific information concerning the penalty that could be imposed upon a conviction. The laws of the State of Indiana provide that upon conviction I am responsible for assessing the penalty within a range and along guidelines set by the legislature.

The law has been written in this manner so that you may make your decision without being influenced by the apparent severity or leniency of the sentence."

Record at 210. Hiner now asserts he was prejudiced by the giving of these instructions and that his conviction therefore should be reversed.

■ Hiner's objection to Instruction No. 5 is that the instruction omits the critical element that the uncorroborated testimony must be believed by the jury in order to support a finding of guilt. However, Instruction No. 15 fully covers the issue of the credibility of the witnesses and their testimony. Instructions must be construed as a whole, not individually as disjointed statements of the law. *Collins v. State* (1981), Ind., 415 N.E.2d 46. The court committed no error in reading Instruction No. 5 to the jury.

■ Hiner objects to Instruction No. 13 as an incorrect statement of the law. He presents neither cogent argument nor cited authority to support a finding of error. The instruction is a correct statement of the law when considered in conjunction with Instruction No. 12 which defines "reasonable doubt."

■ Hiner finally objects to Instruction No. 20, claiming the instruction violates the constitutional mandate that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Indiana Constitution, article 1, section 19. The Supreme Court has consistently held

that it is not error to instruct the jury without giving specific information as to the possible penalties that might be imposed on a defendant if found guilty. *Jones v. State* (1981), Ind., 425 N.E.2d 128; *Comstock v. State* (1980), 273 Ind. 259, 406 N.E.2d 1164; *Craig v. State* (1979), 272 Ind. 385, 398 N.E.2d 658. The court did not commit error when it gave Instruction No. 20.

## VI. Exculpatory evidence.

Hiner contends "the prosecution knew many exculpatory facts that were not revealed to the defendant." In *Richard v. State* (1978), 269 Ind. 607, 382 N.E.2d 899, the Supreme Court discussed the prosecutor's duty to disclose and the effect of a failure to disclose exculpatory evidence.

"*United States v. Agurs* [ (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342] outlines three types of cases in which the prosecutorial duty of disclosure comes into question: (1) cases in which undisclosed evidence demonstrates that the prosecution's case includes perjury; (2) cases in which the defense has made a pre-trial request for specific evidence, and; (3) cases in which evidence was not disclosed but where there was only a general request for discovery by the defense or no request at all. On review, the test applicable to determining the materiality of the omitted evidence is dependent on which of the three types of cases is at hand. *Agurs, supra,* 427 U.S. at 103–7, 96 S.Ct. at 2397–99, 49 L.Ed.2d at 349–52.

\* \* \* \* \* \*

The third class of cases discussed by *Agurs* arise when there has been either a general request for discovery, or no request at all.

\* \* \* \* \* \*

When defense requests are phrased so generally, the prosecutor's duty to disclose can be measured only by reference to the question of whether the evidence in his possession is so 'obviously exculpatory' that his failure to turn it over de-

nied the defendant a fair trial. *Agurs, supra,* 427 U.S. at 107 [96 S.Ct. at 2399].

\* \* \* \* \* \*

[The] standard for *Agurs* 'type III' cases is that the omitted evidence, as 'evaluated in the context of the entire record,' must create 'a reasonable doubt that did not otherwise exist':

" 'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of realtively minor importance might be sufficient to create a reasonable doubt.' *Agurs, supra,* 427 U.S. at 112–13 [96 S.Ct. at 2402]."

382 N.E.2d at 903–04.

■ The first item of alleged exculpatory evidence was evidence that during the trial, Jan Myers, a trial witness, told one of the deputy prosecutors that Myers had seen the prosecutrix drinking alcoholic beverages the day after the rape and before she went to the police with her statement. Hiner offers no argument that this evidence was "obviously exculpatory."

■ Hiner next offers the affidavit of Joe Hamsher in which Hamsher states he did not give the prosecutrix a ride from the diner to the house of her friend Joann Myers after the prosecutrix had returned to town after the rape. On cross-examination at trial, the prosecutrix said he did give her a ride that day. Hamsher also states the prosecutrix "wanted to drop the charges against Terry Hiner but was not allowed to and that only 'kissing and fondling' occurred on June 4, 1982." Record at 20. There is no indication the prosecution ever had this evidence or had any contact with Hamsher. The prosecution cannot have a duty to disclose evidence it did not have or had no obligation to obtain.

■ Hiner also offers a purported affidavit of Officer Cutter containing several statements, none of which have any probative value for the simple reason Cutter never signed the affidavit. Additionally

there is no indication any of the evidence was known to the prosecution.

Hiner makes additional claims which amount to recitations of the conflicting testimony and in no way indicate "obviously exculpatory" evidence which the prosecution withheld from the defense.

Hiner finally argues the prosecution failed to comply with a specific discovery request he made. In *Richard* the court stated:

"The second type of case in which the prosecutorial duty of disclosure comes into question is characterized by a pretrial request by the defense for specific evidence. The case of *Brady v. Maryland* (1963), 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], presented this situation, since it involved a specific request by defense counsel for the extra-judicial statements made by defendant's accomplice. *See Agurs, supra,* 427 U.S. at 104–6 [96 S.Ct. at 2397–9]. When such a request has been made, and requested evidence favorable to the accused is suppressed, a medium level of review is applied: the conviction will be reversed if the evidence 'might have affected the outcome of the trial.' *Agurs, supra,* 427 U.S. at 104 [96 S.Ct. at 2398]. Prosecutorial failure to honor requests for evidence, for which a substantial basis for claiming materiality exists, is thus 'seldom, if ever' excusable. The relatively high level of appellate scrutiny given to the omitted evidence in these cases is based on the fact that the prosecutor is able to assess materiality when he knows precisely the object of his consideration. *White v. Maggio* (5th Cir.1977), 556 F.2d 1352, 1357. Thus, in order to invoke this level of review, the defendant must show that his pre-trial request, 'gave the prosecutor notice of exactly what the defense desired.' *Agurs, supra,* 427 U.S. at 106 [96 S.Ct. at 2399]."

382 N.E.2d 903 (some citations omitted).

Here Hiner contends he made a specific request for a "mug shot" taken of him other than the photograph used in the photographic line-up discussed above. He

claims this particular photograph "was extremely relevant here because it was taken seven days after defendant was arrested and would have shown that at the time of the incident defendant had long, bushy sideburns." Brief at 64. Hiner points out that neither the prosecutrix nor Debra Flager, the bus driver, ever described the assailant as having sideburns. The photograph, he asserts, would have further attacked the prosecutrix' credibility.

The discussion of the "mug shot" of Hiner arose during questioning of Officer Cutter by Hiner's counsel. Counsel presented to Cutter a photocopy of several "mug shots" including Hiner's. The prosecution objected to the introduction of the "mug shots" into evidence. During the argument concerning admissibility it became apparent that the defense had made no pretrial request for the original of the "mug shot;" that the original had been given to Michigan law enforcement authorities as part of their investigation of other charges against Hiner; that Officer Cutter did attempt to find the original after Hiner's counsel made a request at 3:00 p.m. the day before he sought to introduce it; and that neither the original nor photocopy were listed as an exhibit before trial. The court sustained the objection to admitting the photocopy because of its poor quality.

■■■ This set of facts does not establish a need to apply the *Agurs* tests. No pretrial discovery request was made. Additionally, in answer to any other claim of prejudice by Hiner, he made no motion for a continuance in order to obtain this allegedly relevant photograph. In any event the photograph was merely cumulative to the one of Hiner used in the photographic line-up which already had been introduced into evidence and which clearly showed his bushy sideburns. To the extent the jury was to be swayed by the prosecutrix' failure to describe Hiner's sideburns, the line-up photograph had already served any impeachment function. Even had the state failed to comply with a specific pretrial request for the "mug shot" we would be unable to say it "might have affected the outcome of the trial." *Agurs, supra,* 427 U.S. at 104, 96 S.Ct. at 2398.

*VII. Presentence report.*

Hiner finally argues the court erred by failing to excise from the presentence report references to polygraph examinations of Hiner and the prosecutrix. Instead the court merely wrote the word "stricken" next to those references. Hiner fears the Department of Corrections will be unable to understand the meaning of such a notation. He also claims the presentence report should have mentioned the availability of a misdemeanor plea to a charge pending against Hiner in Michigan.

The preparation and consideration of presentence reports prior to sentencing is statutorily required. *Yates v. State* (1982), Ind.App., 429 N.E.2d 992, 994; IC 35-38-1-8—9 (formerly IC 35-4.1-4-9—10). The purpose of such reports is to assist the court in fashioning an appropriately individualized sentence, *Yates, supra,* and further to give the defendant the opportunity to refute any improper sentencing factors the court might intend to consider. *Stanley v. State* (1980), 273 Ind. 13, 401 N.E.2d 689, 694. Having the report considered is a privilege granted by the legislature, not a fundamental right. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. The probation officer and the court have wide discretion as to the report's contents.

■■ Hiner has not shown any error. He does not argue the court impermissibly failed to consider the possibility of a misdemeanor plea to the Michigan charges or that the court considered those pending charges at all. The court found both aggravating and mitigating circumstances in sentencing Hiner to the presumptive ten-year term for a Class B felony. Among the aggravating circumstances the court might have considered were Hiner's record of convictions followed by suspended sentences and the fact Hiner's victim was 15 years old at the time of the rape. The pending charges in Michigan offered no apparent relevance to the court's sentence.

Accordingly Hiner has failed to show that the court improperly considered the references to the polygraph examinations. The court agreed with Hiner that such references should be stricken from the report. As far as the court was concerned, those references were in fact stricken. The statute makes no provision for the deletion of any items before the report is sent to the Department of Corrections. *Smith v. State, supra.*

For the foregoing reasons, we affirm. Affirmed.

HOFFMAN, J., concurs.

STATON, P.J., concurs in part and dissents in part and files separate opinion.

STATON, Presiding Judge, dissenting in part and concurring in part.

I dissent only to the ruling of the trial court regarding Hiner's cross-examination question to the prosecutrix concerning her prior use of drugs. The use of drugs is habit forming and a pattern of usage is not easily changed. The acquired drug habit of the prosecutrix has a direct bearing on her reliability and credibility. Too, her reliance on drugs would directly affect the weight to be given her testimony by the jury. To deny Hiner the right to cross-examine the prosecutrix as to the extent of her drug habit is to deny him a valid defense and a fair trial.