Floyd LITTLE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1282S489.

Supreme Court of Indiana.

March 25, 1985.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Floyd Little, was convicted by a jury of two rapes, one a Class B felony, Ind.Code § 35–42–4–1(a) (Burns 1984 Supp.), and the second rape, a Class A felony, Ind.Code § 35–42–4–1(a) (Burns 1984 Supp.), robbery, a Class C felony, Ind.Code § 35–42–5–1 (Burns 1984 Supp.), and attempted robbery, a Class C felony, Ind.Code § 35–41–5–1 (Burns 1979 Repl.) and Ind.Code § 35–42–5–1 (Burns 1984 Supp.). He was sentenced to the Indiana Department of Correction for a term of ten years for Class B rape, five years for robbery, thirty years for Class A rape, and five years for attempted robbery. The Class A rape and attempted robbery terms are to be served concurrently and the Class B rape and robbery terms are to be served concurrently. The sentences imposed upon the rape and robbery are to be served consecutively with the sentences imposed upon the second rape and attempted robbery convictions.

Defendant's direct appeal to this Court raises the following issues:

1. Whether there was sufficient evidence to support the verdicts; and

2. Whether the trial court abused its discretion by imposing consecutive sentences in the absence of any finding of aggravating circumstances.

A brief summary of the facts most favorable to the state reveals that on October 6, 1981, the first victim was watching television alone in her home at around 11:00 p.m. A black man knocked at her front door to inquire about a man named Tom. The victim testified that the porch light was on which enabled her to see the man well, and she identified defendant both prior to and during the trial as this man.

Defendant left and the victim continued to watch television for another one-half hour and then went to bed. The victim was awakened at approximately 12:15 a.m. by defendant who placed his hand over her mouth and nose and a pillow over her head. After a struggle with defendant, the victim was asked whether she was going to cooperate. Defendant then pushed her down onto the bed and covered her head with a blanket. Defendant asked whether she had any money and then took approximately $180 from her. Defendant then stated he had a knife and that he knew her husband kept more money at home. At this point the victim recognized his voice as that of a black man who had been at her door earlier that evening, and whom she subsequently identified as Floyd Little. Defendant raped the victim, told her not to look and then left. The entire criminal incident took approximately ten minutes from the time the victim was awakened by defendant.

On October 7, 1981, the day after the first victim was raped, she identified defendant's picture in a mug book at the police station. The police did not inform the victim as to the name of the man she chose. The following day, October 8, 1981, completely on her own initiative, she found a picture of defendant in her high school year book and identified him as the man who raped her. Beginning at the front of the yearbook, she looked at approximately thirty photographs of black men before she identified defendant. On October 27, 1981, the victim viewed and identified defendant—both by voice and in person—from a police station lineup composed of six black men. The victim testified that she was positive that the man whom she identified (Floyd Little) was the same man who was on her porch October 6, 1981, and who had raped her on October 7, 1981.

The record also shows that on October 24, 1981, the second victim was awakened shortly after midnight when she felt something over her mouth. Defendant warned her that he was armed and threatened to shoot or kill her if she screamed. When defendant requested money, this victim emptied the contents of her purse to show that she did not have any money. While defendant was holding onto the neck of the victim, she looked up and saw defendant's face and Afro hair style. After defendant raped the victim, he threw an afghan over her head. While he was attempting to

steal her stereo, she watched defendant through the holes in the afghan.

On October 26, 1981, two days after the rape, this victim looked at approximately one hundred photographs of black men in a police mug book. She identified defendant as the man who raped her, but requested a lineup and voice identification. The next day, October 27, 1981, this victim viewed a police station lineup of six black men wherein each lineup participant asked the same innocuous question. The victim identified defendant both by voice and appearance. She testified that she was positive that the man in the courtroom, where she again identified defendant, was the man who raped her. She also testified that she had not been told the name of defendant when participating in pretrial identification procedures and only learned defendant's name later from a newspaper account.

To summarize, the first victim identified defendant on four different occasions: in the police mug book, in her high school yearbook, at the police station lineup, and in court. The second victim also identified defendant on three different occasions: in the police mug book, at the police station lineup, and in court. No suggestion or encouragement was provided by the police before, during, or after any of the pretrial identification procedures.

## I.

Defendant first argues there was insufficient evidence to support the verdict. In considering the sufficiency of the evidence, it is well settled that as a court of review, we will neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we will only look to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be overturned. *Borom v. State,* (1984) Ind., 470 N.E.2d 712; *Johnson v. State,* (1983) Ind., 455 N.E.2d 897; *Duffy v. State,* (1981) 275 Ind. 191, 415 N.E.2d 715.

Citing *Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, defendant argues that the pretrial identification procedures were impermissibly suggestive, thereby tainting the in-court identifications made by both victims. He maintains that the victims did not have sufficient time to view their attacker and thus there was not an independent basis for their identification at trial. Defendant's insufficiency argument is predicated on three theories: suggestive pretrial identification procedures, the absence of counsel at the pretrial lineup and the absence of lice infestation on either rape victim. We will address each of these arguments individually and then consider the totality of the pretrial identification procedures.

Defendant's first insufficiency argument is predicated on suggestive pretrial identification procedures based upon pretrial photographic arrays and lineup identifications.

■ Defendant first contends that the photographic identification made by the first victim was impermissibly suggestive because she identified defendant in her high school yearbook wherein captions accompanied the student photos and thus she learned the name of defendant. In *Haun v. State,* (1983) Ind., 451 N.E.2d 1072, this Court held that a pretrial yearbook photographic identification was not so suggestive as to give rise to a substantial likelihood of misidentification when the victim had not heard defendant's name before selecting defendant's photograph as the man who raped her. Similarly, in this case, the victim did not learn the name of defendant until she chose his photo in the high school yearbook. The police did not tell the victim defendant's name when she previously identified defendant at the police station photographic identification.

■ Defendant next contends that the mug book photograph from which the second victim identified defendant was "much sharper and more distinct than the other photographs on the page." The practice of exhibiting a number of photographs to crime victims for the purpose of identifying the perpetrator is not an impermissible in-

vestigative method. The procedure becomes violative of due process when the display is accompanied by verbal communications or includes graphic characteristics which distinguish and emphasize a defendant's photograph in an unduly suggestive manner. *Head v. State*, (1982) Ind., 443 N.E.2d 44.

While defendant's picture in the mug book may appear more distinct than the other photographs on that page, this Court notes that the entire mug book is comprised of pictures whose size and photographic quality vary. We therefore conclude that the high school yearbook and the mug book photographic identifications were not the product of unduly suggestive procedures likely to result in misidentifications where the victims viewed between thirty to one hundred photographs of black men who were relatively similar in age, complexion and hairstyles and where neither victim was encouraged to select any individual nor informed that the photographic array included defendant.

Next, defendant maintains that the composition of the police station lineup was calculated to draw attention to him because he was the only person in the lineup with disheveled hair, a characteristic noted by the second victim regarding the man who raped her. Distinctiveness of hairstyle has been held to be not necessarily unconstitutionally suggestive. *Fields v. State*, (1975) 263 Ind. 550, 333 N.E.2d 742. In such cases, distinctiveness of hairstyle is only one of a number of factors to be considered regarding the identification. *Aker v. State*, (1980) Ind.App., 403 N.E.2d 847. In state's exhibit #2, which is an accurate photographic representation of the police station lineup, as testified to by both victims, there are six black men of relatively similar age, weight, height, complexion and appearance. All of the lineup participants except one, who is not defendant, have Afro hairstyles. Therefore, the lineup participants were not so dissimilar in appearance or hairstyle as to eliminate all participants except defendant.

Defendant argues that the entire pretrial identification process, particularly with respect to the first victim, "caused the name and face of defendant to be presented in a manner calculated to tie him to the offenses and to cause equivocal early identifications to be reinforced unfairly so as to create a sense of certainty." The totality of the circumstances surrounding pretrial identification are evaluated to determine whether the process was unduly suggestive. A lineup identification is not rendered impermissibly suggestive by reason of precedent identification of defendant from a photographic array where there is no suggestion to the identifying witness that the individual selected by the photograph would be in the lineup. *Woodson v. State*, (1984) Ind., 460 N.E.2d 970. The first victim was only informed that the police had arranged a lineup of suspects for her to view to see if she could identify anyone as the man who raped her. There were no suggestions made by the police that she should be identifying anyone in particular. Under these circumstances the identification procedures were not unnecessarily suggestive of guilt and did not give rise to a substantial likelihood of misidentification.

Defendant further argues that the in-court identifications made by both victims did not have an independent basis separate from the pretrial identification procedures. Assuming arguendo that the pretrial identification procedures were impermissibly suggestive, the in-court identifications made by the victims had an independent basis to support their in-court identifications.

It is the likelihood of misidentification resulting from impermissibly suggestive identification procedures which violates a defendant's right to due process. *Johnson v. State*, (1983) Ind., 455 N.E.2d 897. The central question is whether under the totality of circumstances the in-court identification was reliable even though photographic and lineup identification procedures may have been unduly suggestive.

The factors considered in determining the existence of an independent basis are the witness's opportunity to observe the offender at the time of the crime and the reliability of the witness's recollection of his or her original observation of the offender. *Dooley v. State,* (1981) Ind., 428 N.E.2d 1; *Harris v. State,* (1980) 273 Ind. 60, 403 N.E.2d 327; *Parker v. State,* (1976) 265 Ind. 595, 358 N.E.2d 110; *Dillard v. State,* (1971) 257 Ind. 282, 274 N.E.2d 387; *Hiner v. State,* (1984) Ind.App., 470 N.E.2d 363, 369.

In this case, the record shows that both witnesses had an adequate opportunity to observe defendant at the time of the crime. Both victims had an opportunity to see defendant's face under adequate lighting conditions at some point during the crime. Each victim was alone with defendant for at least ten minutes and each victim was in close proximity to defendant.

There is also evidence which indicates the reliability of the witnesses' recollection of defendant as the man who raped them. The description of the rapist made by the first victim to the police before any pretrial identification procedures was substantially an accurate description of defendant. There was a minimal lapse of time between the crime and the victim's pretrial identification of defendant. The photographic identification was held within one or two days of the crime. The lineup identification was held a few weeks after the first rape and two days after the second rape. Both victims never made any inaccurate identification of defendant nor did either victim ever fail to identify defendant as the attacker.

We therefore conclude that there was not a substantial likelihood of misidentification and that both witnesses had an independent basis to support their in-court identifications.

■ Defendant's second insufficiency argument maintains that the pretrial identification lineup conducted violated his Sixth Amendment right to assistance of counsel. The inquiry is whether the Sixth Amendment right to counsel had attached at the time the lineup was conducted. It is well settled that the Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against defendant. *Kirby v. Illinois,* (1972) 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *Tabor v. State,* (1984) Ind., 461 N.E.2d 118; *Bray v. State,* (1982) Ind., 443 N.E.2d 310.

■ In this state, the commencement of prosecution is governed by Ind. Code § 35-34-1-1 (Burns 1984 Supp.) in which the filing of an information or indictment begins the formal criminal process. *Bray,* 443 N.E.2d at 313; *Winston v. State,* (1975) 263 Ind. 8, 323 N.E.2d 228. Once charges are filed against defendant the Sixth Amendment right to counsel attaches to any critical stage in the proceedings, including pretrial identification lineups, in order to preserve defendant's right to a fair trial. *Kirby v. Illinois,* (1972) 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

■ This Court has held that a lineup conducted prior to the filing of an information or indictment is not a critical stage which necessitates the presence of counsel in order to preserve defendant's right to a fair trial. *Bray,* 443 N.E.2d at 313; *Carman v. State,* (1979) 272 Ind. 76, 396 N.E.2d 344. Therefore, defendant is not entitled to counsel at a lineup that is held before he is formally charged by the filing of an information or indictment. *Tabor v. State,* 461 N.E.2d at 122; *Bray,* 443 N.E.2d at 313; *Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37. Insofar as defendant was not formally charged with rape until two days after the lineup, defendant was not entitled to the assistance of counsel at the lineup.

Defendant argues that while he was not formally charged with rape at the time the lineup was conducted, "he was clearly a 'prime suspect' based on the earlier identifications" made by the rape victims. Defendant further maintains that at the time of lineup "the investigation had reached a stage at which the filing of the information was no more than a formality and that

adversary proceedings had been initiated against him factually, if not formaly." The process becomes adversarial in nature, according to defendant, when the lineup is no longer an "investigatory tool but has become a device to further prosecution of a person who had already been isolated as the prospective defendant."

A similar argument was espoused in *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, wherein the defendant maintained that the police purposefully deferred formal charges in order to evade the assistance of counsel requirement at the lineup. In essence defendant here is arguing that since the lineup was no longer an investigatory tool but a device to further prosecution that formal charges should have been filed before the lineup so as not to evade the assistance of counsel requirement. However, there is nothing in the record to indicate that the lineup was anything but a tool of routine police investigation. The record shows that the probable cause affidavit and information were filed on October 29, 1981, two days after the lineup. The second victim was raped on October 24, 1981, and identified defendant in a photographic identification held on October 26, 1981. At the photographic identification the second victim told the police she would like to see the man in person and hear him speak. The police arranged a lineup for both victims which included voice identification, at the police station on the following day, October 27, 1981. Therefore, the police arranged the lineup identification to provide the probable cause requisite to formal charging, as indicated by the reliance of the probable cause affidavit on the lineup evidence.

Defendant further maintains that a pretrial lineup identification held in the absence of counsel violates his Sixth Amendment right to counsel even where formal charges have not been filed. Defendant cites *U.S. v. Wade*, (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, wherein the U.S. Supreme Court noted that the accused is entitled to counsel at any stage of the prosecution, formal or informal, which could affect the accused's right to a fair

trial. Defendant's reliance on *Wade* is misguided, however, because *Wade* explicitly qualified the informal right to counsel to stages of prosecution. Moreover, any pretrial confrontation of the accused would—according to the *Wade* decision—require a determination as to whether substantial prejudice inhered in the pretrial confrontation and the ability of counsel to avoid such prejudice.

The *Wade* court noted the difficulty in depicting what transpired at the lineup which could result in defense counsel's inability to reconstruct the manner and mode of lineup identification for the jury at trial. In this case, however, there was no hindrance to lineup reconstruction. The lineup procedures used by the police were all the standard procedures which the United States Supreme Court cited with approval, *Wade*, 388 U.S. at 235 n. 26, 87 S.Ct. at 1937 n. 26, 18 L.Ed.2d at 1162 n. 26, and included the following safeguards which were contained in the record:

1. The lineup participants' names were recorded;

2. A transcript of a taped interview which was conducted with both rape victims regarding the lineup procedures conducted; and

3. Though not mentioned in the *Wade* footnote, a photograph of the actual lineup.

Since the role of counsel at the lineup is essentially that of a witness to enable reconstruction of the lineup procedures and to deter prejudices or abuses, *Bruce v. State*, 375 N.E.2d at 1086, the existence and availability of the above procedures enabled defense counsel to reconstruct the lineup procedure. Moreover, since the names of the officers involved, lineup participants, and identifying witnesses were available to defense counsel, he was provided the means to question those persons to ensure that no prejudices inhered in the lineup procedure. When reconstruction of the lineup procedure is thus available and no prejudicial or suggestive factors inhere in the lineup, there is no

right to counsel at a pretrial identification lineup conducted before defendant is formally charged.

■ Finally, defendant argues the insufficiency of evidence based upon the absence of either victim contracting body lice even though defendant showed he suffered from lice infestation during the time of the attacks. Thus, defendant argues he could not have been the man who committed the rapes. However, there is no medical evidence in the record to show that contact with an infected person will absolutely result in an infected victim. *Shaffer v. State*, (1983) Ind.App., 453 N.E.2d 1182. Since defendant neglected his opportunity to present such evidence at trial, we will not consider this issue further.

## II.

Defendant argues the trial court abused its discretion by imposing consecutive sentences in the absence of any finding of aggravating circumstances. However, we find the record shows that at the sentencing hearing the trial judge did state that the reason for the imposition of consecutive sentences was that there were two unrelated crimes.

Statutory authority to impose consecutive sentences is provided by Ind.Code § 35–50–1–2(a) (Burns 1979 Repl.) which vests the trial court with discretion in determining whether sentences upon multiple convictions are to run concurrently or consecutively. Guidance for imposing consecutive sentences is given in Ind.Code § 35–38–1–7 (Burns 1984 Supp.).

■ It is well established that when the trial court uses its discretionary power to increase or decrease the basic sentence or impose consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives to be served by that sentence.

*Warren v. State*, (1984) Ind., 470 N.E.2d 342; *Allen v. State*, (1983) Ind., 453 N.E.2d 1011.

Aggravating circumstances are listed in Ind.Code § 35–38–1–7(b) (Burns 1984 Supp.) and are preceded by an introductory qualifying clause: "[t]he court *may* consider the following factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment." (Emphasis added.) Subsection (d) states "[t]he criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence."

■ The legislature has indicated factors which may be considered as aggravating circumstances, but the statute expressly does not limit the matters the court may consider in determining the sentence. *Allen v. State*, 453 N.E.2d at 1012. As we stated in *Bish v. State*, (1981) Ind., 421 N.E.2d 608, 617: "[w]hen deciding whether to impose consecutive sentences, the trial court does not deviate from the statutory procedure or abuse its discretion in considering relevant factors in addition to those listed in § 35–4.1–4–7(c)." [Since repealed and now codified as Ind.Code § 35–38–1–7.]

■ The trial judge's discretion to impose consecutive sentences is limited by the requirement that the judge should articulate facts in the case that support a finding "of the presence of *at least one* of the aggravating circumstances" listed by statute before consecutive terms of imprisonment may be imposed. *Taylor v. State*, (1982) Ind., 442 N.E.2d 1087, 1092 (emphasis added).

Generally consecutive sentences have been imposed on separate offenses which arose from the same criminal incident and which transpired during the course of continuous criminal conduct. *Warren*, 470 N.E.2d at 344; *Zachary v. State*, (1984) Ind., 469 N.E.2d 744, 746; *Taylor*, 442 N.E.2d at 1088.

However, in this case, two criminal acts which were separate offenses (rape and robbery; rape and attempted robbery) were

committed on two separate occasions, October 7, 1981, and October 24, 1981, and upon two separate victims.

In *Brown v. State*, (1982) Ind., 442 N.E.2d 1109, a defendant was convicted of three counts of rape, three counts of confinement, two counts of robbery, and one count of attempted robbery. The sentences within each of the three cases were to be served concurrently but the sentences on each different case were to be served consecutively. There was a time interval of one and one-half hours between the first and second rapes and an interval of one month between the second and third rapes. In *Brown*, 442 N.E.2d at 1117, we found that neither the sentencing order nor the sentencing hearing stated any aggravating circumstances for the imposition of consecutive sentences. We remanded the cause with instructions to vacate the order of consecutive sentences and enter an order of concurrent sentences. However, the present case is distinguishable from *Brown* because the trial court in *Brown* explicitly stated in the record that the court found neither aggravating nor mitigating circumstances.

▪ In the present case, at the sentencing hearing the trial court stated that "[i]nasmuch *as they were two separate crimes*, the Court is going to order Count I and Count IV to be served consecutively with Count II and Count III." (Emphasis added.) Thus, the trial court segregated the crimes committed against each rape victim and considered the fact that this defendant had committed two separate crimes against two different victims to be a sufficient aggravating circumstances to support the imposition of consecutive sentences. We find no error in the imposition of consecutive sentences here as the court did state a proper aggravating circumstances to support the sentence.

Finally, the consecutive sentences are not manifestly unreasonable in view of the nature of the offenses and the character of the offender.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and PIVARNIK, J., concur.

DeBRULER, J., concurs and dissents with opinion in which PRENTICE, J., concurs.

PRENTICE, J., concurs and dissents and joins in DeBRULER, J.'s concurring and dissenting opinion.

DeBRULER, Justice, concurring and dissenting.

I vote to affirm these convictions, but to remand to the sentencing judge for a clear and meaningful statement justifying the imposition of consecutive sentences. The law invests the sentencing judge with the authority to impose consecutive sentences, however in exercising this authority the court must give specific reasons for its actions. *Brown v. State* (1982), Ind., 442 N.E.2d 1109. The only basis offered by the judge on the record to support his determination of consecutive sentences is that there were "two separate crimes". In my view such statement is not sufficient to satisfy this requirement of specificity.

PRENTICE, J., concurs.