91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earl L. JOHNSON, Petitioner-Appellant,
v.
Craig HANKS, Respondent-Appellee.
 No. 96-1178.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 16, 1996.*
Decided July 16, 1996.
 
 Before CUMMINGS, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 An Indiana jury convicted Earl L. Johnson of kidnapping, rape, criminal deviate conduct, and robbery. He was sentenced to a total of 135 years of imprisonment. After exhausting his state court remedies, Johnson petitioned for a writ of habeas corpus. 28 U.S.C. § 2254(a). On December 15, 1995, the district judge denied the petition. Johnson appeals.
 
 
 2
 After reviewing the district judge's entry denying the petition, we conclude that he thoroughly and properly addressed Johnson's stated grounds for relief. Accordingly, for the reasons set forth in the attached entry, the judgment denying Johnson's petition is AFFIRMED.[1]
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF INDIANA
 TERRE HAUTE DIVISION
 
 3
 Earl Lynn Johnson, Petitioner,
 
 
 4
 v
 
 
 5
 Craig Hanks, Respondent.
 
 
 6
 Cause No. TH 95-124-C-R/H.
 
 
 7
 ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
 
 DIRECTING ENTRY OF JUDGMENT
 
 8
 This cause is before the Court on the petition of Earl Lynn Johnson ("Petitioner" or "Johnson") for a writ of habeas corpus, on the Respondent's return to order to show cause, on Johnson's reply to the return and on the expanded record of Johnson's trial in the Marion Superior Court, Criminal Division V.
 
 
 9
 Whereupon the Court, having read and examined such petition, return, reply and record, now makes its ruling.
 
 I. BACKGROUND
 
 10
 Johnson was charged in Marion County, Indiana on July 27, 1981, with one count of Kidnapping, a class A felony; one count of Robbery, a class B felony; one count of Rape, a class A felony; and one count of Criminal Deviate Conduct, a class A felony. At the conclusion of the trial, the jury returned verdicts of guilty on all four counts. He was sentenced on January 8, 1982 to terms of 40 years for the offenses of Kidnapping, Rape and Criminal Deviate Conduct, and a term of 15 years for the Robbery offense. The sentences were to be served consecutively, for a total of 135 years, with credit of 169 days for time spent in confinement prior to sentencing. Johnson's convictions were affirmed on appeal in Johnson v. State, 455 N.E.2d 897 (Ind.1983).
 
 
 11
 The evidence at trial, as summarized by the Indiana Supreme Court, showed the following:
 
 
 12
 The victim, I.V., testified that after leaving the Waffle House Restaurant in Indianapolis where she worked as a waitress and part-time manager at 1:00 a.m. on July 26, 1981, she stopped at a gas station. Defendant approached her as she stood outside her car there in a well-lit area and asked her for a light and a ride several times. When she refused, he pointed a small silver gun at her and told her to get in her car. She complied and he got in the back seat.
 
 
 13
 At defendant's direction, and with the gun pointed at her, I.V. drove to a nearby alley. He demanded her money and she gave him "three (3) or four (4) five's (5's) and a one (1) or two." After placing the money in his front pants' pocket he ordered her to remove part of her clothing and to get in the back seat with him. Defendant then raped her and forced her to perform fellatio on him. He asked I.V. for cigarettes, and she gave him a package of "Kool Milds." He also asked for her name and phone number. She wrote down the fictitious name "Linda" and the phone number of the Waffle House on a slip of paper torn from an envelope in the car. Defendant took both the cigarettes and the piece of paper and ordered I.V. to drive several blocks where he got out of the car.
 
 
 14
 I.V. immediately drove the short distance back to the Waffle House, returning there at approximately 1:30 a.m., and informed Wilbur Tyler, an off-duty sheriff's deputy who was a customer there, about the assault. After listening to her description of her assailant as about five feet, six inches tall with a small build, having a medium afro, and wearing a white tank top shirt, cut-off blue jeans and white tennis shoes, Deputy Tyler telephoned the police dispatcher and left immediately in his unmarked car to attempt to locate the assailant.
 
 
 15
 Deputy Tyler drove to the intersection of 49th and Norwaldo where the victim had reported that the defendant had gotten out of the car. There he spotted a man exactly matching the description provided by I.V. He identified himself as a police officer, displayed his badge and asked defendant if he would accompany him. After responding "sure", defendant got into the car, whereupon Tyler advised him of his rights. Tyler drove the defendant to the Waffle House, returning less than ten minutes after he left, at approximately 1:40 a.m.
 
 
 16
 Upon seeing the defendant emerge from the car, I.V. exclaimed, "That's him." He was brought to the window of the restaurant where I.V. observed him from inside at a distance of three to five feet. She reaffirmed her identification and defendant was then told by police officer Douglas Scott that he was being placed under arrest. A search of his front pants' pocket yielded sixteen dollars (three five dollar bills and a one dollar bill), a package of "Kool Milds" and a slip of paper with the name "Linda" and a phone number on it. I.V. identified this at trial as the same piece of paper she had given her attacker.
 
 
 17
 Johnson, 455 N.E.2d at 898-99.
 
 II. DISCUSSION
 A. Scope of Review
 
 18
 Johnson seeks relief in this action pursuant to 28 U.S.C. § 2254(a). He is entitled to relief under this statute only if he demonstrates that he is held in custody pursuant to the judgment of a State court in violation of the Constitution, laws or treaties of the United States.
 
 B. Analysis
 
 19
 1. Sufficiency of Evidence. Johnson's first claim is that the evidence produced at trial was insufficient to support the convictions. In reviewing such a claim, the role of a federal habeas corpus court is merely to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). The Supreme Court has underscored the limits of this review:
 
 
 20
 In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution," 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original); that the prosecution need not affirmatively "rule out every hypothesis except that of guilt," id., at 326, 99 S.Ct. at 2792; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Ibid.
 
 
 21
 Wright v. West, 112 S.Ct. 2482, 2492-93 (1992).
 
 
 22
 The only appropriate inquiry for this Court under Jackson
 
 
 23
 is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.
 
 
 24
 Branion v. Gramly, 855 F.2d 1256, 1266 (7th Cir.1988), cert. denied, 490 U.S. 1008 (1989). The elements of a crime are determined with reference to state law. Jackson, 443 U.S. at 324, 99 S.Ct. at 2792.
 
 
 25
 Johnson makes much of what he contends to be the inadequate or inconsistent trial testimony of the victim. Even reviewing the Petitioner's version of the victim's testimony as set forth in his traverse, the existence of any remotely significant inconsistency is not apparent.[1] In addition to the testimony of the victim, the State produced Deputy Tyler, who encountered the hysterical victim only minutes after the crime. Tyler located Johnson and brought him to the location of the victim, where he was identified as the perpetrator under well-lit conditions. The State also produced testimony from Officer Scott, who stated that he removed items from Johnson's pant's pocket which were identified as belonging to the victim.
 
 
 26
 In addressing this claim in Johnson's direct appeal, the Indiana Supreme Court offered the following assessment:
 
 
 27
 The victim's account of the crime together with the evidence that defendant exactly matched the victim's description of him, was found in the vicinity of the crime moments after it occurred and was reported, and had on his person the amount of money taken from the victim, a package of the same kind of cigarettes and the note that the victim had given her assailant, provided sufficient evidence of probative value from which a reasonable jury could have concluded that defendant was guilty beyond a reasonable doubt.
 
 
 28
 Johnson, 455 N.E.2d at 899. The summary of the evidence is fairly supported by the record and is thus entitled to the presumption of correctness required by 28 U.S.C. § 2254(d). Applying the standard established in Jackson, the evidence clearly was sufficient to support Johnson's conviction on all four counts. Johnson's contrary argument, that he had an alibi, was obviously not deemed credible by the jury. His account is also not binding on a reviewing court. For this court to adopt Johnson's assertion that the verdict was not supported by the evidence would require a complete inversion of the proper constitutional test. His version of the test--essentially, "Could the jury have reached some other conclusion?"--is not controlling or even persuasive in these circumstances.
 
 
 29
 2. Admission of Certain Exhibits. Petitioner next contends that the trial court improperly admitted certain evidence offered by the State. After being identified by the victim, Johnson was arrested and handcuffed; two photographs were then taken of him by an officer at the scene. These photographs were offered by the State at trial. Johnson contends that these photographs were prejudicial since they portrayed him "in a state of obvious restraint and arrest."
 
 
 30
 The admissibility of evidence in a State criminal trial is generally a matter of state law. See Gross v. Greer, 773 F.2d 116, 119 (7th Cir.1985); United States ex rel. Searcy v. Greer, 768 F.2d 906, 910 (7th Cir.), cert. denied, 474 U.S. 996 (1985). Therefore, unless a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial. See Woodruff v. Lane, 818 F.2d 1369, 1373 (7th Cir.1987); Cramer v. Fahner, 683 F.2d 1376, 1385 (7th Cir.), cert. denied, 459 U.S. 1016 (1982). That would occur, in the context of the introduction of objected-to evidence, only if the probative value of the evidence introduced was greatly outweighed by its prejudicial effect. Woodruff, 818 F.2d at 1373. In this case, the photographs were introduced by the State to demonstrate that the description given by the victim matched perfectly the appearance of Johnson at the time of his arrest. The probative value of these photographs was not greatly outweighed by their potentially prejudicial effect.
 
 
 31
 Johnson also claims that these photographs, as well as some cash, a package of cigarettes and a slip of paper found on Johnson's person at the time of his arrest were improperly admitted as they were products of an unlawful arrest. Johnson asserts that he was arrested at the time he was picked up by Officer Tyler, prior to being identified by the victim, notified of his arrest or placed in restraints. He contends that this arrest lacked probable cause, hence any evidence which was produced as a result of it was inadmissible. The court agrees with the Indiana Supreme Court that the arrest was the result of probable cause, hence lawful. The victim's trial testimony indicated that she had given the items at issue to her assailant; their introduction supported her identification of Johnson as her assailant.[2]
 
 
 32
 3. In-Court Identification. Johnson next contends that the trial court erred in allowing the victim to identify him in-court, as her identification was a result of an unnecessarily suggestive pretrial confrontation. A short time after commission of the crime, Johnson was brought to the location of the victim, taken from a police car, and the victim was asked if she could identify him. The victim stood inside a restaurant, with Johnson outside in a well-lit parking lot. He contends that this method of eliciting an identification from the victim was unnecessarily suggestive and tainted her later in-court identification.
 
 
 33
 Since first recognizing due process challenges to identification testimony in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967), the Supreme Court has developed a two-part inquiry to govern such challenges. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977). Initially, we must determine whether the police used an unduly suggestive procedure in obtaining the identification. If so, we must "determine whether, under all of the circumstances, that suggestive procedure resulted in a substantial likelihood of irreparable misidentification." United States ex rel. Lee v. Flannigan, 884 F.2d 945, 948 (7th Cir.1989) (citations omitted). The entire inquiry is based in reality: "[Reliability] is the linchpin in determining the admissibility of identification testimony," and testimony that, despite the corrupting influence of prior suggestion, remains reliable under the totality of the circumstances, is still admissible. Manson, 432 U.S. at 114, 97 S.Ct. at 2253.
 
 
 34
 There are, generally speaking, two kinds of identification testimony which raise suppression problems. Sometimes a witness is asked to identify the defendant in the courtroom, during trial. At other times the witness is asked to testify to having identified the defendant on an earlier occasion, before trial. Many witnesses, including the victim here, are asked to do both. The measure of whether an in-court identification is or is not reliable despite an earlier, unnecessarily suggestive (and usually, out-of-court) identification, is whether the suggestion connected with the earlier identification was so corrupting as to lead to "a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 381 (1972); Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968). The same standard, "with the deletion of 'irreparable,' " also serves when the issue is the admissibility of testimony as to the earlier identification. Biggers, 409 U.S. at 198, 93 S.Ct. at 381. In either instance, the factors to be considered in assessing reliability and the likelihood of misidentification include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Manson, 432 U.S. at 114, 97 S.Ct. at 2253; Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382.
 
 
 35
 In this case, the victim saw her attacker at a well-lit gas station prior to the crime, and later during the commission of the crime itself. She gave the police a detailed description of her attacker immediately after the crime. Her description matched Johnson nearly perfectly. Within ten minutes of reporting the incident, she identified Johnson as the attacker; Johnson was not in handcuffs and he was accompanied by only one police officer at the time of this identification. The victim identified him again at trial. Applying Manson and Biggers, the suggestiveness, if any, created by the initial identification, was not so corruptive as to lead to a substantial likelihood of misidentification. The trial court did not commit error when it allowed admission of the victim's in-court identification.
 
 
 36
 4. Failure to Instruct Jury on Lesser Included Offenses. Johnson next asserts that the trial court committed reversible error when it refused to give instructions tendered by him concerning the lesser included offenses of Battery and Criminal Confinement. "Failure to instruct on a lesser included offense, even if incorrect under state law, does not warrant setting aside a state conviction unless 'failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice.' " Nichols v. Gagnon, 710 F.2d 1267, 1269 (7th Cir.1983) ( quoting United States ex rel. Peery v. Sielaff, 615 F.2d 402, 404 (7th Cir.1979)), cert. denied, 466 U.S. 940 (1984).
 
 
 37
 While these lesser offenses are arguably "included" in the crimes charged, see Johnson, 455 N.E.2d at 901, the evidence presented at trial could not have supported a conviction for either of the lesser offenses. As the Indiana Supreme Court found,
 
 
 38
 Defendant proffered an alibi defense, claiming that he was not the perpetrator of these offenses and presenting testimony in support of this defense. He presented no evidence that some crime occurred but not in the manner in which [the victim] testified. Thus, ... defendant was either guilty of the charged offenses or was not guilty at all.
 
 
 39
 Id. at 901. The court is persuaded by this reasoning. The trial court's refusal to give the tendered instruction concerning lesser included offenses did not amount to a "fundamental miscarriage of justice."
 
 
 40
 5. Instruction Concerning Resistance by Victim. Johnson next argues that the court committed error when it gave the State's tendered instruction describing the type of resistance required by a woman assaulted with an intent to commit rape. In the context presented by this claim, the Due Process Clause is violated if, in evaluating an infirm instruction in the context of all the instructions, the court concludes that the infirm instruction "infected the entire trial." Cupp v. Naughten, 414 U.S. 141, 147 (1973). Before an instruction can be so characterized "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. at 146. No such violation of a right has been shown here.
 
 
 41
 Johnson objects to the giving of this instruction, "because there was no evidence given of resistance, one way or other. It was not an issue in this matter." (Petitioner's Traverse, p. 21). In fact, however, testimony at trial indicated the assailant placed his gun in the back window of the car at some point during the commission of the rape and the criminal deviate conduct. Later, he retrieved it from beneath the back seat. From this, questions regarding the victim's duty to resist could have arisen in the minds of the jurors. The trial court was warranted in giving the instruction, and certainly giving it did not infect Johnson's trial and render it fundamentally unfair.
 
 
 42
 6. Length of Sentence. Johnson's final claim is that the trial court committed error when it enhanced the presumptive sentences attributable to each criminal count and made the service of these sentences consecutive. He also takes issue with the fact that reasoning behind the sentence was not fully explained by the trial court. These circumstances do not support a viable claim for habeas relief. In Williams v. Duckworth, 738 F.2d 828 (7th Cir.1984), the Seventh Circuit Court of Appeals noted that "as a general rule, a federal court will not review state sentencing determinations that fall within statutory limits." Id. at 831 ( citing Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983); Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980)). The sentences in this case were within the boundaries established by the Indiana legislature, and nothing in this case justifies an exception to the rule of limited review of state sentencing determinations; therefore, this claim is not cognizable in a habeas petition.
 
 III. CONCLUSION
 
 43
 The court has carefully and completely reviewed the state record in light of the Petitioner's claims. It has given such consideration to the claims raised as the limited scope of its review in a habeas corpus proceeding permits. The court finds no violation of Johnson's rights such as to warrant the relief which he seeks. Accordingly, the petition for a writ of habeas corpus must be denied and this cause of action dismissed with prejudice. Judgment consistent with this Entry shall now issue.
 
 
 44
 IT IS SO ORDERED.
 
 
 45
 /s/ Gene E. Brooks
 
 GENE E. BROOKS, Judge
 United States District Court
 Date: 12-15-95
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On April 24, 1996, while this case was pending on appeal, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. Title I of this Act significantly curtails the scope of collateral review of convictions and sentences. We need not decide to what extent the amendments in the Act apply to petitions pending when the Act was signed into law, or what effect those amendments have if they apply, because, even under the more expansive scope of review permitted prior to the Act, Johnson is not entitled to relief
 
 
 [1]
 The only discrepancy the court could glean from the record is the victim's testimony that the perpetrator of the crimes against her was 5'3"', although petitioner describes himself (albeit without corroboration) as 5' 7"'. (Record of State Court Proceedings 292 and 178). Even this difference, however, is not a discrepancy or inconsistency in the testimony of the victim; it is, rather, a patently minor and insignificant description of Johnson's height from two different persons
 
 
 [2]
 Johnson does not make a clearly distinct Fourth Amendment claim that the evidence just described was obtained as a result of an illegal search and seizure. Even if such a claim could be distilled from his petition and traverse, however, it would be rejected
 [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.
 Stone v. Powell, 428 U.S. 465, 494-95, 96 S.Ct. 3037, 3052-53 (1976) (footnotes omitted). The admissibility of the evidence was discussed by the trial court at length outside the presence of the jury. (Record, p. 214-221). The admissibility of the evidence was also evaluated by the Indiana Supreme Court on appeal. Through these processes, any Fourth Amendment claim was fully and fairly litigated in the state courts, and is not now subject to additional review.